Note.—See under (1) 28 Cyc. p. 525; 22 R. C. L. p. 530; 3 R. C. L. Supp. p. 1266.

---

**HURST et al. v. CHAMPION et ux.**

No. 13525—Opinion Filed June 9, 1925.

Rehearing Denied March 9, 1926.

**1. Specific Performance — Discretion of Court—Refusal Where Inequitable.**

An application for specific performance is an appeal to the sound discretion of the court, and one of the principles that control the exercise of this discretion is that specific performance of a contract will not be decreed when the enforcement would be inequitable under the particular facts as they exist.

**2. Contracts—Rescission—Performance of Vital Part Becoming Impossible.**

The true rule appears to be that rescission or cancellation may properly be ordered where that which was undertaken to be performed in the future was so essential a part of the bargain that the failure of it must be considered as destroying or vitiating the entire consideration of the contract, or so indispensable a part of what the parties intended that the contract would not have been made with that condition omitted.

**3. Same—Performance Made Impossible by Other Party.**

Where a party to an executory contract puts it out of his power to perform, the other party may, at his option, treat it as terminated at once.

, (Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Frank Mathews, Assigned Judge.

Action by T. F. Champion and Alice Champion against H. S. Hurst, W. F. Harn, J. F. Winans, and Oklahoma City Land & Development Company. From judgment in favor of plaintiffs, defendants bring error. Affirmed.

W. F. Harn and H. S. Hurst, for plaintiffs in error.

Ledbetter, Stuart, Bell & Ledbetter, for defendants in error.

Opinion by PINKHAM, C. This suit was originally instituted in the district court of Oklahoma county on February 14, 1913, by T. F. Champion and Alice Champion, his wife. defendants in error, as plaintiffs, against H. S. Hurst, W. F. Harn, J. F. Winans, and the Oklahoma City Land & Development Company, a corporation, to cancel certain contracts for deeds, which contracts had been placed of record.

In the first trial of this cause the trial court rendered a judgment in which the contracts in question were canceled and the cloud removed from plaintiffs' title, upon the condition that the sum of $1,000 be paid to the defendant Oklahoma Land & Development Company, and this sum was made a lien upon the plaintiffs' land.

The case was reversed by this court— Champion v. Oklahoma City Land & Development Co. (61 Okla. 135, 139 Pac. 854), where it was held that the $1,000 lien upon the land was void and the case was reversed and remanded to the trial court with directions to grant a new trial.

The case proceeded to trial in the instant case upon the amended petition, which al-

leged in substance that plaintiffs would make deeds to 25 acres of their land upon the agreement on the part of defendant to construct and operate, or cause to be constructed and operated, a standard gauge electric railway from the city of Oklahoma City to the center of plaintiffs' land, said contract providing further for hourly schedule, five cent fares, etc.; that defendant has never completed and does not operate such line of railway and has ceased to operate the same and has abandoned the same, and that there has been an entire failure of consideration; and on that account the plaintiffs are entitled to a cancellation of the contracts and a removal of the cloud from the title, the defendant having placed the contracts of record.

The defendants filed their answer and cross-petition, wherein they denied all the material allegations of plaintiffs' petition, except such as were admitted; alleged that they had complied with the said contracts; and asked for specific performance requiring the plaintiffs to execute deeds to the Oklahoma City Land & Development Company for the said 25 acres.

During the progress of the trial the case was dismissed as to H. S. Hurst, W. F. Harn, and J. F. Winans, and proceeded against the Oklahoma City Land & Development Company.

A jury was waived and at the close of the evidence judgment was rendered by the court in favor of the plaintiffs, quieting the title to the land involved in the suit, against the Oklahoma City Land & Development Company; and that the defendants and each of them are not entitled to recover anything upon their cross-petition against the plaintiffs.

The court made findings of fact substantially as follows:

That the grade and roadbed for the line was completed and the rails and ties on the ground and the line in operation within the time prescribed in the contracts;

That the completed line complied substantially with the contract and as completed was substantially a standard gauge line with the exception that on the east end of the line there was a deficiency of ties, there being not more than seven or eight ties to the rail for a short distance on this end;

That the single car on the line was usually run on an hourly schedule, commencing about 7:30 a. m., and stopping about 6:30 p. m., with the exception that the car stopped for the noon hour and for occasional break-downs;

That the revenues from the operation of the line did not pay operating expenses, it costing about ten times more to operate the line than was derived from the revenues of same;

That the line was operated until the month of September, 1916, when the car belonging to the company was destroyed by fire, and the operation of the line then ceased, and that there is no indication that the line will be again operated; and that the court concludes that the operation of the same has been entirely abandoned, although the roadbed is still intact as completed with the exception that it is in a bad condition owing to the fact that it had been entirely neglected since the operation of the car;

That owing to the fact that the operation of the line has been entirely suspended with no probability of its renewal, the consideration for the land in controversy has failed;

That demands were made upon plaintiffs for delivery of the deeds upon the completion of the grade and when ties and steel for such line were put on the ground as provided in the contracts, and also when the line was completed and put in operation, but plaintiffs failed and refused to deliver any of such deeds.

The court concluded, as a matter of law, that the consideration having failed, the plaintiffs are entitled to the relief prayed for. Judgment was rendered canceling the two contracts sued upon, holding the same null and void as to the land described therein.

Defendants' motion to modify and amend the findings of fact and conclusions of law, and their motion for a new trial, were, by the court, overruled, and exceptions saved.

Defendants have duly appealed.

It is contended by counsel for defendants that the trial court should have dismissed the action of plaintiffs and awarded judgment to defendants as prayed for in their cross-petition.

The argument is, that, by reason of the fact appearing on the face of plaintiffs' petition and disclosed by the evidence, the plaintiffs were not in court with clean hands, in that they had not complied with the provisions of the contracts by executing deeds to the 25 acres upon the completion of the line.

Briefly stated, the history of the controversy in this case, as it appears in the rec-

ord before us, is that in the year 1909 Mr. Hurst, Mr. Winans, and Mr. Harn conceived the plan of building an interurban railway running from the limits of Oklahoma City out toward what is termed "Northeast Lake." They obtained bonus contracts from the landowners along the line, among which, are the two contracts in question, which they obtained from the plaintiffs, one of these contracts being for 15 acres and the other for 10 acres, out of the plaintiffs' homestead tract, situated about three miles northeast of Oklahoma City.

These contracts provided that the promoters should "construct and operate, or cause to be constructed and operated, a standard gauge electric railway from the present city limits of Oklahoma City to the center of the south boundary line" of the plaintiffs' homestead.

These contracts were both taken over by the Oklahoma City Land & Development Company.

A large amount of testimony was introduced on the part of both plaintiffs and defendants for the purpose of showing that the line had been or had not been completed.

The defendants stress the admitted fact, as shown by the court's finding, that one car was run upon this line for some six years and the conclusion is drawn from this fact that the plaintiffs failing to make their deeds to the 25 acres, the trial court should have rendered judgment in favor of the defendants and required the plaintiffs to specifically perform their contracts.

There is no conflict in the evidence that for a distance of a mile or a mile and a half, in the direction of plaintiffs' land, there was a deficiency in the number of ties such as is required in a standard gauge railway.

The court found that there were from seven to eight ties on that part of the road running to the plaintiffs' land.

The plaintiff Champion testified that: "In 1909 and up in 1910, when they built the line, and as I say on the 8th day of May, the ties were from five to six ties to the rail for a mile and a half on the length of the line running south."

Numerous photographs of this part of the railway are incorporated in the record which appear to corroborate the plaintiffs' statement.

The effect of the testimony of witnesses of long experience in railroad building, who examined this railway, is that it could not be said to have been properly constructed,

so far as that part of the line running to plaintiffs' land is concerned.

With the line in this condition, the Oklahoma City Land & Development Company commenced to run one car over it from 7:30 a. m., to about 6:30 p .m., in 1910, and continued to so operate until September, 1916, at which time the railroad ceased to operate, the defendant having abandoned the project.

It appears that the promoters of this enterprise attempted to bond the road for $75,000, and contemplated platting an addition on the plaintiffs' farm, both of which endeavors they failed to accomplish.

In this situation the plaintiff Champion refused to execute the deeds to the defendants upon the demand made by them, until he was assured that the road was not a mere temporary device to obtain a bonus. In other words, it appears, from a perusal of the evidence, that Mr. Champion regarded the railroad as a temporary arrangement at the time demand was made for the deeds, and he took the position that the contract executed by himself and his wife to make deeds to 25 acres of their farm was executory in its character and until the contract was performed by the construction and operation of a standard gauge railway from Oklahoma City to his land and operated as a permanent line he would withhold the execution of the deeds.

It must be conceded that subsequent events justified his attitude in this respect.

The scheme of the railway promoters proved to be a failure from the beginning.

One of the promoters, the treasurer of the defendant company, stated that from the first day of January, 1911, to August, 1912, a period of 18 months, the receipts from fares was $538, and the expense of operating the road was $10,644, for the same period of time.

The testimony further shows that about September, 1916. the one car owned and operated by the defendant was destroyed by fire; that the wire was stolen, and that from that date the road ceased to operate altogether.

It further appears that on August 15, 1913, the defendant sold its real estate and holdings to the Capital Realty Company and its railroad holdings to the Capital Traction Company, so that it will be seen that the defendant Oklahoma City Land & Development Company is no longer a going concern; that it has no railroad or real estate; and that the line has been, for many years,

totally abandoned; and, as said by the court in one of its findings of fact, "that owing to the fact that the operation of the line has been entirely suspended, with no probability of its renewal, that the consideration for the land in controversy has failed."

The defendant, it is clear, under such a state of facts, is in no position to ask for specific performance, inasmuch as it cannot operate the road and give the service to the plaintiffs, as was in contemplation when the contracts for deeds were signed.

Before a party can obtain specific performance he must show himself ready, willing, desirous, prompt, and eager to perfrom his part (Pomeroy, Equity Jurisprudence [3d Ed.] par. 1407.

It is well settled that an application for specific performance is an appeal to the sound discretion of the court, and one of the principles that control the exercise of this discretion is that specific performance of a contract will not be decreed where the enforcement would be inequitable under the particular facts as they exist. 25 R. C. L. 223.

The abandonment of the railway line by the defendant and its inability to carry out its agreement gives plaintiffs the right to cancellation and removal of the cloud from their title.

"Where one party to a contract abandons it and refuses further performance, the other party is entitled to rescind." 13 C. J. par. 668.

In Black on Rescission and Cancellation, volume 1, paragraph 213, it is said -

"But the true rule appears to be that rescission or cancellation may properly be ordered where that which was undertaken to be performed in the future was so essential a part of the bargain that the failure of it must be considered as destroying or vitiating the entire consideration of the contract, or so indispensable a part of what the parties intended that the contract would not have been made with that condition omitted."

Many cases are cited by the defendant to the effect that where the party has executed a deed for the bonus for building of a railroad the party in a case of that kind is held to his recovery in a suit for damages on account of the failure of the railroad company to carry out its part of the contract. These were executed contracts where the title and possession of the land had passed by executed deeds to the railroad company; and it was held in many of these cases that it would be inequitable to disturb titles by a reconveyance of the property where, in all likelihood, there might have been several changes of title; and where it was held in some of the cases the parties could not be placed in statu quo.

These cases appear to us to be inapplicable to the facts in the instant case.

The contract here is an executory contract, and the possession of the land has never passed out of the plaintiffs.

In Black on Rescission and Cancellation, par. 196, it is said:

"But aside from question of fraud, it is a general rule that if a contract is entire and remains executory in whole or in part and one party fails to perform what it is his duty to do under the contract, and the other party is not in default, the latter may rescind the contract."

This well-settled rule is not questioned by defendant, but it is contended that the plaintiffs were in default in not executing the deeds to the 25 acres in May, 1910, at the time, it is claimed, the line was completed, and in operation.

The record discloses that two contracts were entered into by and between the plaintiffs and H. S. Hurst in August, 1909, each providing that "said Hurst shall construct and operate, or cause to be constructed and operated, a standard gauge electric railway from the present city limits of Oklahoma City to the center of the south boundary line" of the plaintiffs' farm. Both contracts provide that "in consideration of the construction of said line between the points herein mentioned said Champion hereby agrees to assign, transfer, and make over to said Hurst by good and sufficient warranty deeds, the following described real estate" amounting to 15 acres in one contract and 10 acres in the other contract.

The 10-acre contract contains the provision that one-third of the ten acres shall be executed when the grade is completed, one-third when the steel and ties are on the ground, and one-third when the line is in operation.

The 15-acre contract does not contain this provision with reference to the time and conditions upon which a deed should be executed.

The plaintiff was not in default, but appears to have been always ready and willing to execute the deeds whenever the defendant evidence an intention of doing its part; that is to say, constructing and operating a standard gauge electric railway from Oklahoma City to his land.

That the defendant, itself, did not con-

sider a standard gauge electric railway was constructed and operated to the plaintiffs' land within the purview of the contracts when in May, 1910, it requested the plaintiff, Champion, to execute the deeds, is evident by reason of the fact that it took no action to compel the execution of the deeds for more than three years thereafter, when, in its cross-petition to the plaintiffs' suit, it asked for specific performance, and, as before stated, soon after the suit was filed by plaintiffs in 1913 the defendant disposed of the road and all of its holdings except the contracts in question.

From whatever angle this case, as disclosed by the record, is examined, we are impelled to the conclusion that the judgment of the trial court, canceling the two contracts in question and denying the defendant the relief prayed for in its cross-petition, was right, and should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 36 Cyc. pp. 548, 693. (2) 9 C. J. p. 1176 (1926 Anno). (3) 13 C. J. p. 615.