POWEL et ux. v. ROGERS et al.

No. 33883. March 14, 1950.

*216 P. 2d 283.*

Wise & Ivester, of Sayre, for plaintiffs in error.

Charles L. Orr, of Oklahoma City, for defendants in error.

LUTTRELL, J. This action was originally commenced by William B. Powel and Anna M. Powel, his wife, and a number of other plaintiffs, to cancel mineral conveyances made to defendants, B. H. Rogers, W. G. Rogers and Thomas E. Nix, trustees of Pan Mutual Royalties Company, and Pan Mutual Royalties Company, a Trust Estate. The trial court sustained a demurrer for misjoinder of causes of action to the petition of plaintiffs, and required that the various plaintiffs separately docket their separate causes of action against the defendants, but permitted the case to go to trial as to the plaintiffs, William B. Powel and Anna M. Powel, upon the amended petition filed by the plaintiffs and the answer of defendants. At the conclusion of the hearing the trial court found generally for the defendants and denied the plaintiffs the relief which they sought. Plaintiffs appeal.

The amended petition alleged that plaintiffs were the owners of 160 acres of land in Roger Mills county; that the

Pan Mutual Royalties Company was a business trust organized on or about May 27, 1931, and that on February 6, 1932, plaintiffs executed and delivered to the defendants a mineral deed conveying one-half of their mineral interests to the trust estate, and received as a consideration for said conveyance a certificate certifying that they were the owners and holders of 400 shares of beneficial interests out of a total of ten million authorized shares in Pan Mutual Royalties Company. As ground for cancellation plaintiffs alleged that defendants had wholly failed to operate the business of the trust or to carry it on in any manner for the benefit of plaintiffs, and that so far as plaintiffs knew or could ascertain, the trust and the business of the trust had been wholly and entirely abandoned by defendants, and the object and purpose thereof had been abandoned, and that by reason thereof the real and principal consideration moving to plaintiffs for the execution and delivery of said mineral grant had wholly failed. Plaintiffs further alleged that they had no legal remedy, since by the trust agreement they had no control over or voice in the management of the affairs of the trust, or in the selection of trustees, and could not claim the right to call for a partition and division of the trust property, or a termination or dissolution of the trust, or for an accounting.

In their answer defendants denied that they had failed to operate the business of the trust or that they had abandoned its objects and purposes, but alleged that they were managing and operating the same actively as provided by the trust agreement, and had acquired and owned approximately 40,000 acres of mineral rights in Oklahoma and other states. They also pleaded that the plaintiffs were barred by limitation and laches, since the action was not commended until May 2, 1946, some 14 years after the date of the mineral deed made by plaintiffs, and the issuance of the certificate of interests to them.

Plaintiff William B. Powel testified that he was solicited by an agent of defendants to make the mineral deed to defendants in return for a certificate of interests, and that said agent represented that defendants had some producing wells and quite a lot of proven territory; that defendants were going to develop their property as fast as they could and drill, and that plaintiffs would soon be drawing dividends from their stock. He further testified that he had never received any communication from defendants after the receipt of his certificate of interest; had no notice of any meeting of the board of trustees, and had never received any dividends. He did not testify that the representations made to him by the agent were false, or that he ever discovered anything which led him to believe they were false, nor did he testify as to why at the end of 14 years he brought this action without making any inquiry or demand upon the defendants as to the conducting of the business. So far as the record shows he at no time made any inquiry of defendants as to the operations of the company, or its failure to pay dividends, nor did he make any complaint of any kind as to the method of operation of the trust by the trustees.

For the defendants the evidence showed that they had actively conducted the business; that at the time of trial they had some 40,000 acres of mineral interests, an office and office furniture, and some $6,000 in the bank. The testimony showed that they had pursued the policy of holding the mineral interests in the hope of production rather than of disposing of them at a profit, and that they had only a very small amount of production up to the time of the trial. The trustee who testified as to the condition of the trust stated that it had been the victim of "dry holes" and that some 35 or 40 dry wells had been drilled in areas within which portions of their mineral interests were located. He further testified that to reimburse them for the

sum of some $53,000 advanced by them to the trust, and to pay for their service as trustees in accordance with the provisions of the trust agreement, they had issued to themselves certificates of interests amounting to approximately 30 per cent of the total outstanding shares; that they had at all times been active and diligent in endeavoring to lease the mineral interests held by them and to procure production therefrom, and that they were still actively pursuing that policy.

The trust agreement, after providing that the object of the organization was to enable parties who desired to invest in oil, gas and mineral properties to spread such investments over a larger territory than would ordinarily be possible to them, by acquiring shares in the trust, thus increasing the opportunity of the investor to become interested in properties which might become valuable for the production of minerals, provides as follows:

"Therefore, the purposes of this Trust, are, through the Trustees, to purchase or otherwise acquire oil, gas, and other minerals, and mineral estates in lands, in whole or in part, together with rights, pertaining thereto, in such form and upon such terms and conditions and for such considerations as the Trustees may deem proper, and own, hold, sell, lease, trade in and for, and otherwise deal in and dispose of, such property or any part thereof, or interest therein, upon such terms as the Trustees may deem proper.

"To purchase or otherwise acquire, own, care for, utilize, sell and otherwise deal in and dispose of, such other rights or property, upon such terms and in such form as to the Trustees may seem necessary or proper in connection with the purposes mentioned in the paragraph above."

Plaintiffs' sole contention is that the trustees adopted a policy of not selling or dealing in mineral interests, but of holding the same in the hope of obtaining production thereon; that this was an abandonment of the purposes of the trust, and that therefore the consideration for the transfer of the mineral interests of plaintiffs failed, entitling them to rescind.

We are unable to agree with this contention for the reason that the power given the trustees to own, hold, lease, sell, or trade in and for mineral interests vested them with discretion to determine whether, in a given case, they would sell a mineral interest owned by the trust when surrounding development caused it to increase in value, or whether they would hold the same, lease to some individual or company who might develop it, and in that way attempt to acquire production for the trust. The trustee who testified at the trial stated that this latter course was the policy of the trust from the beginning, but there is no testimony in the record that this policy was invariably pursued, or that in a given case, had the trustees considered such course desirable, they would not or could not dispose of the mineral interests of the trust if they considered such disposal was for the best interest of the trust. In other words, the matter was left, under the trust agreement, to the discretion of the trustees, and there is nothing in the record to indicate an abuse of this discretion. The fact that this policy had not brought returns to the certificate holders in the way of dividends, because of the large number of dry wells drilled in the vicinity of the holdings of the trust, does not convict the trustees of bad faith or neglect of the best interests of the trust. If it, in fact, constituted mismanagement, plaintiffs had their remedy by a proceeding to remove the trustees from office. Myers v. Oklahoma Oil & Gas Royalty Co., 192 Okla. 620, 138 P. 2d 109; Oklahoma Fullers Earth Co. v. Evans, 179 Okla. 124, 64 P. 2d 899.

In Myers v. Oklahoma Oil & Gas Royalty Co., supra, we said:

"The plaintiff complains that the trustees are inactive and are not pursuing the purposes of the trust and have paid no dividends to the shareholders. These complaints might be considered valid

in a proceeding to remove the trustees, as such, but are insufficient as grounds for the dissolution of the trust. The plaintiff's petition does not state any fact that would indicate that the purposes of the trust are no longer capable of fulfillment under proper management, or that the business could not be properly continued as contemplated by the agreement, or any other facts or circumstances that would empower the court to decree a dissolution of the trust and the winding up of its affairs."

While that case involved an action to dissolve an express trust, we think the statement above quoted applicable to the situation here involved. The cases of Hurst v. Champion, 116 Okla. 228, 244 P. 419, and Memorial Park v. Vaughan, 191 Okla. 50, 126 P. 2d 711, cited by plaintiffs, involved situations so dissimilar to the instant case that they are of little value. In Hurst v. Champion, supra, the streetcar line which was the sole consideration for the execution of the contract by the plaintiffs had been entirely abandoned, and in Memorial Park v. Vaughan, supra, the trust had been converted from a private profit sharing trust into a public nonprofit organization, and upon such conversion a contract had been made whereby the new nonprofit association was to pay the owners of shares not assenting to such change for their shares. The suit brought by plaintiffs in that case declared upon that contract as well as upon the certificates.

In each of the above cases it is clear that the entire purpose of each trust had been abandoned, or wholly changed, without the assent of the certificate owners bringing the actions.

In the instant case the purposes of the trust remained the same, and from the evidence it appears that the trustees were actively pursuing the policy of leasing mineral interests wherever possible in the hope of obtaining production therefrom. The trustee who testified stated that at the time of the trial they had approximately two or three thousand acres of mineral interests under lease, and that he was endeavoring to sell additional leases which he hoped would enable the trust to pay dividends. The record wholly fails to show a failure of consideration, or that the purposes of the trust had been abandoned by the trustees.

Affirmed.