## VANLANDINGHAM v. NEWBERRY.

No. 14591—Opinion Filed Nov. 12, 1924.

### 1. Statutory Provision.

If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly, as for example, if it consists in the payment of money only, it must be performed immediately upon the thing to be done being exactly ascertained.

### 2. Oil and Gas—Time of Payment for Lease.

Where a contract for the sale of an oil and gas lease specifies the amount the lessee agrees to pay the lessor when the lessor furnishes the lessee with a good and merchantable title to the lands described therein, the time of payment, not being expressed in the contract, is when the lessor furnishes to the lessee such title.

### 3. Specific Performance—Discretion of Trial Court.

Specific performance of contracts is a matter resting in the sound discretion of the court, but controlled by principles of equity on full consideration of the circumstances of each particular case.

### 4. Same—Denial of Relief Sustained.

Record examined and, held, the judgment of the trial court denying specific performance is sufficiently supported by the evidence.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Garvin County; W. L. Eagleton, Judge.

Action by W. F. Vanlandingham against W. N. Newberry. From judgment in favor of the defendant, plaintiff brings error. Affirmed.

Bowling & Farmer, for plaintiff in error.

H. G. Butts and J. B. Thompson, for defendant in error.

Opinion by PINKHAM, C. This was an action brought by the plaintiff in error against the defendant in error for the specific performance of a contract.

The parties will be referred to as they appeared in the trial court, plaintiff in error as plaintiff, and defendant in error as defendant.

The case was tried before the court without the intervention of a jury, and resulted in a judgment for the defendant.

Plaintiff filed his motion for a new trial, which was by the court overruled, and from which judgment and order of the court the plaintiff prosecutes his appeal to this court.

The assignments of error are grouped in plaintiff's brief into three propositions substantially as follows: First, that plaintiff was entitled to have his rights measured by the written contract, which was signed by the parties; second, that a written contract cannot be modified or changed by a

subsequent oral agreement; third, that there was not evidence sufficient to warrant the finding that there was a subsequent parol agreement to make time as of the essence of the contract.

All of these propositions, in effect, raise the one question of whether the contract between the parties involved in this action was changed by a subsequent oral agreement.

The facts necessary to be stated are substantially as follows:

On the 23rd day of September, 1921, the defendant, W. N. Newberry, made and entered into a written contract with one J. S. Ball, by the terms of which the said Newberry agreed to sell to the said Ball an oil and gas lease on all of the interest of said defendant in and to ten acres of land, in the Robberson oil field, and particularly described in said contract. At that time it was not known exactly what interest the defendant owned in said ten acre tract, but the contract of sale covered the defendant's entire interest, whatever it might. be, and for said oil and gas lease on the defendant's said interest in said tract of land the defendant was to receive the sum of $75 per acre to be paid upon the furnishing by the defendant of an abstract of title showing a merchantable title in and to whatever interest was owned by the defendant in said tract.

It appears that this contract was placed of record by Ball. The abstract was delivered by the defendant to Ball a day or two after the execution of the contract, to wit September 23, 1921.

Ball kept the abstract for about one month thereafter and then gave it back to the defendant. It appeared from the abstract that one Angeline Williams owned an undivided one-eighth interest therein; that G. A. Porter owned an undivided one-eighth interest; and that E. N. Nesbitt owned an undivided one-half of all oil, gas and mineral rights; leaving only an undivided one-fourth in the oil and mineral rights of said lands belonging to the defendant.

In this situation the defendant and Ball saw Nesbitt, the owner of said one-half interest as shown by said abstract, and an agreement was entered into by the terms of which Nesbitt agreed to sign the oil and gas lease from the defendant to Ball, the defendant to receive all of the lease money for an undivided three-fourths interest of the whole tract, being the one-half interest owned by Nesbitt and the one-fourth interest of the defendant, for $75 per acre for 7½ acres.

Pursuant to that agreement and understanding the defendant executed an oil and gas lease in regular form covering the lands described in the contract between defendant and Ball, and left the said lease with Nesbitt with instructions to sign it and collect from Ball the sum of $550.

Nesbitt signed the lease on the date of this arrangement, on Tuesday, October 18, 1921, and it appears there was at that time and on that date a distinct understanding between the defendant, Newberry, Nesbitt, and Ball that the oil and gas lease was ready to be delivered to Ball upon his payment of the amount theretofore agreed upon.

It clearly appears that on October 18, 1921, the title was satisfactory; that Nesbitt, the owner of a one-half interest, and the defendant, the owner of a one-fourth interest, executed the lease; that Ball was satisfied with the title, and that it was then incumbent upon him to comply then and there with the plain terms of the contract by paying to the defendant the $75 per acre as provided in the contract.

There is a slight conflict in the evidence as to when Ball should make the payment and receive the lease.

Both Nesbitt and the defendant stated that Ball should make the payment at Nesbitt's office not later than the following Saturday by 4 o'clock. Ball stated that the agreement was that he should pay the required amount to Nesbitt and receive the lease on Saturday, October 22, or the next morning.

The trial court in its findings of fact found that "all three (the defendant, Ball, and Nesbitt) agreed at that time (October 18, 1921), that the lease contract was left in the hands of Nesbitt until the money was paid. Nesbitt and Newberry stated that the matter was left open until 4 o'clock of that day (Saturday, October 22). Ball, if he did not testify directly, left the inference from his testimony that if the money was paid that afternoon (Saturday) or the next morning, that the lease contract would be turned over."

The court further found "from the evidence that the time limit was 4 o'clock on Saturday and the evidence is conclusive that the money was not paid and was not tendered on that day."

The court further found that "giving Ball the credit as against the other two witnesses that it was that day (Saturday) or the next morning, the time limit was not even then, under the evidence in this case, met."

It further appears that upon the failure

of Ball to pay the money on Saturday, October 22, 1921, Nesbitt removed his signature from the lease and returned the lease a few days later to the defendant.

The evidence clearly shows that Ball at no time was in a position himself to pay for the lease; that he had arranged with, or attempted to arrange with, one John Law to furnish the money necessary to complete the transaction, and that he had informed Law that the matter was then ready to be closed and the money paid.

Evidence was introduced to the effect that Mr. Law on Monday following Saturday, October 22, 1921, met Nesbitt and had a conversation with him on the street in relation to the matter.

Mr. Law's version of the conversation was to the effect that he was prepared to settle with Nesbitt, while Nesbitt stated he met Mr. Law Monday morning, who inquire of him whether Ball had taken up the lease on Saturday, and when informed that he had not Law asked him if he had the abstract; that he told him he had not but that the defendant had it, and that nothing more was said upon the subject.

It further appears that on the 21st day of December, 1921, the said Ball assigned the contract in question to the plaintiff, Vanlandingham.

On the 10th day of January, 1922, Angeline Williams instituted this action in the district court of Garvin county setting up in her petition that she was the owner of an undivided one-eighth interest in said ten acre tract, and asking for a partition thereof.

The defendant, Nesbitt, the plaintiff, Vanlandingham, and others were made parties defendant in said action.

The plaintiff, Vanlandingham, filed his answer and cross-petition in said action, setting up the contract given by the defendant to Ball and the transfer and assignment of said contract to him, and asked for a decree of specific performance on the part of the defendant, Newberry, of said contract.

It is earnestly contended by counsel for plaintiff in their brief that the written contract sued on in this case is simple and plain, and nowhere therein is it attempted to make time as the essence thereof; that J. S. Ball and his assignee, plaintiff in error, were entitled to have their rights measured by the terms and conditions of the contract which was actually made; that the parties were entitled to a reasonable length of time in which to consummate the transaction contemplated by the written contract.

In support of this contention section 5061, Comp. Stat. 1921, providing that "time is never considered as of the essence of a contract unless by its terms expressly so provided," is cited. And decisions of this court in support of the first and second propositions submitted in plaintiff's brief are referred to construing section 5061, supra, and section 5081, Comp. Stat. 1921, which provides that "a contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise." Maisen v. Cartright, 43 Okla. 737, 144 Pac. 375; Early v. King, 38 Okla. 206, 135 Pac. 286; Baker v. Haswell, 36 Okla. 429, 128 Pac. 1086; Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118.

The statutes and decisions relied upon by plaintiff to the effect that time is never considered as of the essence of a contract unless by its terms expressly so provided have, we think, in view of the undisputed facts disclosed by the record in this case, no application.

In view of the terms of the contract involved in this case, we conclude that when the title to the land in question became satisfactory to Ball the amount of money due by the terms of said contract was immediately payable.

It is admitted that the title was satisfactory on the 18th day of October, 1921. The money was not paid at that time and Mr. Ball was given until the following Saturday to make the payment, and it is admitted the money was not paid or tendered on this day.

The fact that Ball, who was not financially able to comply with the contract on October 18, when, as before stated, the title was admittedly satisfactory to him, was given until the 22nd day of October to procure the money, was a pure matter of grace and did not, we think, change or modify the contract in question.

"If no time is specified for the performance of an act required to be performed a reasonable time is allowed. If the act is in its nature capable of being done instantly, as for example, if it consists in the payment of money only, it must be performed immediately upon the thing to be done being exactly ascertained." Sec. 5060, Comp. Stat. 1921.

In Young et al. v. Ellis (Va.) 21 S. E. 480, it is said:

"An agreement to pay money, no time being specified, is held to be an agreement to pay the same on demand, and an agree-

ment to pay money yearly is an agreement to pay at the end of the year from the date of the agreement; while agreement to do something other than to pay money, no time being expressed, means a promise to do it within a reasonable time."

The time of payment under the contract in this case, no time being specified therein, means at the time the title to the lands involved became satisfactory to the purchaser.

It is contended under the third proposition discussed in plaintiff's brief that there was no evidence sufficient to warrant the finding that there was a subsequent parol agreement to make time as of the essence of the contract, and, further, that there was no agreement on the part of anyone to comply with defendant's unreasonable demands.

We conclude from a careful examination of the evidence disclosed by the record in this case that the judgment of the trial court to the effect that specific performance should be denied the plaintiff is amply supported by the evidence.

At the close of the trial the court dictated into the record its findings of fact and conclusions of law, and such findings and conclusions, although not requested by either party, may be considered on appeal in determining the correctness of the conclusions on which the judgment is based. (Rogers v. Harris, 76 Okla. 215, 184 Pac. 459.)

It was the conclusion of the trial court that, taking into consideration all of the facts and circumstances of the case, Ball clearly would not be entitled to specific performance on the part of the defendant of said contract, and that as the plaintiff could have no other or further right, title, or interest in the matter, than his assignor, Ball, judgment was entered for the defendant.

Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by the principles of equity on full consideration of the circumstances of each particular case. 25 R. C. L. 214; Spengler v. Sonneberg, 38 Ohio St. 192. Ann. Cas. 1914D, 1083.

Upon an examination of the entire record we are of the opinion the judgment of the trial court is sufficiently supported by the evidence and should be affirmed.

By the Court: It is so ordered.