**CRUTCHFIELD v. GRIFFIN et al.**

No. 19734.    Opinion Filed Oct. 1, 1929.

J. G. Austin, for plaintiff in error.

Horace B. Durant, Marshall W. Hinch, and Vern E. Thompson, for defendants in error.

FOSTER, C.    John H. Crutchfield began this action in the district court of Ottawa county on June 3, 1927, against Victor W. Griffin, to compel specific performance of an optional contract for purchase of real estate, dated August 15, 1925. The lower court refused specific performance, and from this judgment John H. Crutchfield appeals. The parties will be referred to as they appeared in the trial court.

It appears from the testimony and pleadings in this case that, on the 5th day of August, 1925, the plaintiff and defendant entered into a written contract, by the terms of which the defendant gave the plaintiff an option to purchase certain lands in Ottawa county, the option to remain in force and effect for a period of ten days. The defendant was to furnish an abstract showing a merchantable title, and, in the event the attorney for the plaintiff should make requirements concerning the title, the defendant was to have 30 days within which to meet those requirements. The contract was made for the consideration of $1, and the option to purchase for the sum of $8,000.

This contract of August 5th appears to have been entered into between the parties at the hotel room of the plaintiff in Miami, where a mutual friend of both plaintiff and defendant had asked the defendant to go to plaintiff's room for the purpose of selling the land.

On August 15th the plaintiff approached the defendant in Baxter Springs, Kan., and asked him to execute another contract. According to the testimony of the defendant, the plaintiff told him that it was exactly like the contract entered into on August 5th, with the exception that it gave the defendant 30 days, instead of ten, within which to exercise his option. This contract was duly executed in Baxter Springs, Kan., and, in substance, provides that the plaintiff shall have

an option to purchase the land of the defendant for the sum of $8,000, and that he (plaintiff) shall have a period of 30 days from date to perfect the title to the satisfaction of his attorney, and, "in the event the title cannot be so perfected within said 30 days, then the second party (plaintiff) may extend the time for the perfection of said title for a sufficient period to meet said requirements." It is further provided that the option shall be in full force and effect until ten days after the perfection of the title and delivery of the abstract to the second party (plaintiff), and that the second party (plaintiff) may exercise this option at any time during said period; that upon the exercising of the option, the defendant and his wife shall execute a good and sufficient warranty deed. This is the contract relied upon and for which specific performance is asked.

It appears that the defendant is an Indian, and that his land, which is in question in the suit at bar, was a part of an inheritance which he and some other Indians inherited, the other Indians being described in the testimony as the "Buffalo heirs." This plaintiff inherited one-half the land and the Buffalo heirs inherited the other half. A partition suit had been instituted in the district court of Ottawa county, and the land divided or partitioned between them, the defendant receiving the land involved in this action as his part of the land so inherited. But, in order to make the title merchantable, it was necessary to secure from the Department of the Interior an order approving the partition of the land, thereby showing title to the land here involved in the defendant and title to the other part of the inherited land in the Buffalo heirs.

It appears that plaintiff, at the time of executing the contract of August 15th, told the defendant that it was necessary for his attorney to go to Washington, D. C., to get this order from the Department of the Interior, and that after execution of the contract, plaintiff's attorney did go to Washington, but failed to secure the order; that some other parties represented by other attorneys were interested in the other part of the land, that is, the part owned by the Buffalo heirs, and that this plaintiff had some conversation with the attorneys representing the parties interested in securing the mining lease upon the land owned by the Buffalo heirs; that through the efforts of the attorneys for the parties desiring to secure a mining lease on the land owned by the Buffalo heirs, the order from the Department of the Interior was finally secured. However, this order was not secured until in March, 1927. In the meantime, plaintiff

and defendant had had some conversation in which the plaintiff told the defendant that it looked as though their deal was going to fall through, and that the defendant agreed to this.

At the time of securing the optional contract, the defendant borrowed from the plaintiff the sum of $200, but made a note for the payment of same. Sometime after the execution of the contract, he induced the plaintiff to indorse his note for the sum of $500 at a bank. It was understood that when the contract was finally consummated, the $200 borrowed should be deducted from the purchase price. There seems to be no definite understanding concerning the $500 note on which the plaintiff was indorsee. The plaintiff also paid for an abstract of the property in the sum of about $80.

After entering into the contract of August 15th, there was no offer on behalf of the plaintiff to pay the defendant the sum of $8,000, or any other sum, until on the 14th day of May, 1927, when plaintiff wrote defendant a letter offering to pay the amount due under the optional contract and requesting that a deed be issued pursuant thereto. In the meantime, it appears that the land involved in this action had increased in value from about $8,000 to $50,000 or $80,000. It also appears that a short time after the execution of this contract, plaintiff had made a contract with other parties for the sale of this property at $150 an acre, but he was to receive a 2 per cent. royalty on all minerals that were produced therefrom.

After reading all of the testimony, the court entered a general judgment in favor of the defendant denying specific performance, and from this judgment the plaintiff prosecutes this appeal.

The court made no special finding of fact, although, after the judgment was entered and at the time the motion for a new trial was argued, it was requested to do so. The brief of plaintiff criticizes the trial court for its action in not making a special finding, but presents no authorities to support his contention, and we think under the record the court had a right to refuse to make special findings.

It is well settled in this state that where a finding of the trial court is general, such finding is a finding of each special thing necessary to sustain the general verdict. Apple v. American Nat. Bank, 104 Okla. 69, 231 Pac. 79.

Many propositions are argued in the briefs for a reversal of this action. It is contended that the verdict is erroneous, because, under

the pleadings and proof, there is nothing to support the defense of lack of consideration, that there was no defense of fraud alleged or proven, as the defendant could read and write, and that any representations made to him about what the contract contained could not be set up as a defense.

It is further contended that there is no proper defense to this action on the grounds of laches or delay, for the reason that where there is no time limit provided in a contract for the doing of an act, a defense cannot be predicated upon a plea of delay or laches short of the running of the statute of limitations, where neither party gives notice or makes demand that the other party performed the conditions of the contract.

It does appear in this case that the full-blood Indian could read and write, although he apparently read English with some difficulty. But assuming, without deciding, that the evidence in this case shows that the defense of fraud and misrepresentation cannot be relied upon, and that there was a valid consideration for the execution of the optional contract, which appears to be a necessary requirement in the execution of any valid optional contract, we will pass to the proposition of whether or not under the facts and circumstances in this case, the plaintiff was guilty of laches and delay sufficient to set aside and hold void the contract.

As above stated, the original contract called for ten days, with an additional 30 days within which to correct any defects in the title. The second contract, which is the one sued upon, gave the plaintiff 30 days, with the very peculiar and indefinite provision that if he was not able to complete the title within that time, he should have whatever additional time was necessary to complete it.

No time is stated just when the contract should be consummated, but we think from an examination of the entire record of the case and the circumstances surrounding the same, that the court was justified in refusing specific performance in this case on account of laches and delay.

A suit for specific performance is addressed to the sound legal discretion of the trial court, but controlled by principles of equity on full consideration of the circumstances of each case. Vanlandingham v. Newberry, 104 Okla. 98, 230 Pac. 728. That an action of this kind is not a matter of right, but is a question for a court of equity, and, although a defense to an action in specific performance is not such as would warrant a rescission of the contract at the suit of defendant, still, a court of equity may

refuse to compel specific performance. 36 Cyc. p. 548; Solomon v. Shewitz (Mich.) 152 N. W. 196.

The general rule, as provided by section 5061, C. O. S. 1921, that time is never of the essence of a contract, unless by the terms of the contract it is expressly so provided, has been construed in many cases, and there appear to be many exceptions in case of optional contracts.

It has been held that no particular form of expression is required, if it appears from the provisions contained in the contract that it was the intention of the parties that time should be of the essence thereof. Cases along this line are numerous in Oklahoma, particularly pertaining to oil and gas leases. Mitchell v. Probst, 52 Okla. 10, 152 Pac. 597.

When contracts are optional in respect to one party, they are strictly construed in favor of the party who is bound and against the party not bound. Jones v. Moncrief-Cook Co., 25 Okla. 856, 108 Pac. 403; Kolachny v. Galbreath et al., 26 Okla. 772, 110 Pac. 902.

Time is always the essence of an optional contract unless the contract expressly provides that it shall not be. 36 Cyc. 1342; Mitchell v. Probst, 52 Okla. 10, 152 Pac. 597.

From the authorities above cited and many others to the same effect, we think that, in the case of optional contracts, such as the one involved in the case at bar, the general rule that time is not of the essence of a contract, unless expressly so provided, has no application here.

It has also been held that a great advance in the value of property after the execution of an optional contract, and before the same is consummated, is a circumstance that may be taken into consideration by the trial court in determining whether or not an unreasonable length of time has expired and whether the property was being held for speculative reasons, and the court may for that reason refuse specific performance. White v. Greenamyre (Colo.) 234 Pac. 164; 36 Cyc. p. 724.

Following these general principles as laid down by the many decisions of this court, as well as other courts, we believe that, owing to the fact that two contracts were entered into, one giving an option of ten days with an additional limit of 30 days, and the other giving an option of 30 days with an additional limit that the time might be extended until the title was perfected, the parties only contemplated a reasonable time after the expiration of the 30 days, and un-

der the record a year and six or seven months would be an unreasonable time.

There is considerable discussion in the briefs as to whether or not the plaintiff under the testimony did anything to perfect the title. According to the contract, it was his duty to see that the title was made merchantable, and there is some testimony to show that he never exercised any diligence whatever, but simply waited until the parties who were interested in the other part of the land—that was owned by the Buffalo heirs—secured an order from the Department, which necessarily straightened up the title to both pieces of land.

We think, under all of these facts, together with the long time that expired between the date of the contract and the time within which this plaintiff offered to perform his part of the same, and taking into consideration the fact that the property increased in value from $8,000 to at least $50,000, that the finding and judgment of the lower court denying to the plaintiff specific performance of his contract is not clearly against the weight of the evidence.

We are further supported in this conclusion by the fact that there is some testimony that after the execution of the contract the parties mutually agreed to rescind it. An optional contract, in writing, may be rescinded by the oral consent of both parties. Saxon v. White, 21 Okla. 194, 95 Pac. 783; Houts v. Conrad, 98 Okla. 153, 224 Pac. 357.

There is considerable testimony that at one time both parties considered the contract as rescinded. However, we do not wish to say that there is sufficient testimony to justify the court in finding that the parties orally agreed to rescind the same. But this fact, taken in connection with all the other facts and circumstances in the case, supports the court's finding that the plaintiff is not entitled to a decree ordering specific performance.

Another circumstance that supports the judgment of the court is the fact that the Department of the Interior approved the partition of the land on March 15, 1926, and the letter approving the same was received by the Indian Agency at Miami March 29, 1926. The receipt of this letter certainly perfected the title. Under the contract plaintiff was to have ten days after the perfection of the title to exercise his option. He made no attempt to exercise it until May 14th.

The judgment of the trial court should be, and is hereby, affirmed.

TEEHEE, LEACH, DIFFENDAFFER, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (3) 25 R. C. L. p. 256. (5) 25 R. C. L. p. 251; 4 R. C. L. Supp. p. 1577; 7 R. C. L. Supp. p. 839. (6) 2 R. C. L. p. 204; R. C. L. Perm. Supp. p. 1760. See "Appeal and Error," 4 C. J. § 2722, p. 775, n. 26; § 2869, p. 900, n. 96. "Contracts," 13 C. J. § 776, p. 683, n. 1. "Specific Performance," 36 Cyc. p. 548, n. 41; p. 721, n. 85. "Trial," 38 Cyc. p. 1977, n. 37. "Vendor and Purchaser," 39 Cyc. p. 1332, n. 5; p. 1343, n. 93.