(No. 7220. May 1, 1945.)

MYRTLE MAY CHATTERTON, Respondent, v. LORENZO LUKER and ALICE LUKER, husband and wife, Appellants.

[158 P. (2d) 809.]
Rehearing denied June 4, 1945.

Black & Black for appellants.

H. J. Swanson for respondent.

MILLER, J.—This case discloses that on October 20, 1939, Mrs. Chatterton, the respondent, acquired the title to Lot 6 and the Southerly half of Lot 5 of Block 213 of Pocatello Townsite, Idaho, from the heirs of a Mr. Hastie, deceased. For about two years prior to his death Mr. Hastie, a widower and an invalid, who died about October 16, 1939, had occupied one of the rooms of the house on the property and had boarded with and was cared for by Mrs. Chatterton. It was to repay her for her services in caring for Mr. Hastie that his heirs conveyed the premises to her. At the time Mrs. Chatterton acquired the property there was a mortgage thereon for $1000.00, long past due, and demand was made that she pay the same, together with collection charges of $125.00, later reduced to $75.00 Immediately after demand for the payment of the mortgage and collection charges, Mrs. Chatterton solicited various real estate firms, loan agencies, banks and individuals in an attempt to negotiate a loan on the property to obtain money with which to pay off the existing mortgage, but seemingly without success. For upwards of eighteen to twenty years previously, she and her husband, during his lifetime, and the appellants had been and were close per-

sonal friends. About the 27th of December, 1939, Mrs. Chatterton, who up to that time had been unsuccessful in negotiating a loan, called on Mr. Luker, one of the appellants, and stated her needs and requested his assistance. There is evidence that she was hard pressed and that her failure in securing the needed loan was not so much because of inadequate security, but more particularly because she was a widow, and it was not until she had exhausted every recourse known to her that she applied to Mr. Luker to assist her in securing the loan and to prevent foreclosure of the mortgage. It is evident that at the outset Mr. Luker made some effort to render her the needed assistance without thought of becoming the bona fide owner of the premises. This is manifest from the fact that he went with Mrs. Chatterton to see various people and concerns in soliciting the loan, among others being Aletha Packard, who came to the place and looked the property over, but declined to make the loan and observed, in substance, that she wouldn't make the loan to either Mrs. Chatterton or to Mr. Luker. It is apparent that at the time they talked with Aletha Packard they tried to interest her in making the loan to Mrs. Chatterton, but failed in that respect; they then sought the loan in the name of Mr. Luker, and she refused to make the loan to either of them. It is somewhat difficult to determine from the record the definite date that respondent and appellant Luker decided that the property should be deed to him in order to place him in a better position to negotiate and secure a new loan.

On January 5, 1940, Mrs. Chatterton, accompanied by Mr. Luker, went to the office of Mr. Black and Mrs. Chatterton executed a deed as grantor to Mr. Luker as grantee. The deed was not delivered until January 12, 1940. It is the oral agreement, if any, alleged to have been made by Mrs. Chatterton and Mr. Luker that constitutes the gist of this action. Reference to the complaint by Mrs. Chatterton, plaintiff and respondent, against Luker and wife, defendants and appellants, filed June 8, 1943, furnishes the best means of determining the nature of the agreement as alleged by her, and wherein it is shown that ever since October 20, 1939, she had been and still is the owner in fee simple of the real property hereinbefore described; that on or about January 5, 1940, she made, executed and delivered, as grantor, to Lorenzo Luker, one of the appellants, as grantee, a warranty deed, conveying said real

property, dated January 5, 1940, and recorded January 13, 1940, in Book 81 of Deeds, at page 20. (A) That for approximately twenty years prior thereto she was well acquainted and friendly with both Mr. and Mrs. Luker, appellants; (B) that at the time the deed was executed and delivered there was a real estate mortgage which was a lien against the property, dated September 5, 1926, as security for the payment of a note in the sum of $1000.00, long past due and unpaid; (C) that for some time prior to January 5, 1940, the owner and holder of said note and mortgage insisted that Mrs. Chatterton pay the same, or failing therein foreclosure proceedings would follow; (D) that in order to comply with such demand for payment she endeavored to obtain money and to give as security a mortgage on the property, but she found that as a widow without definite earning capacity she was unable to obtain the needed loan; (E) that under such circumstances and in an effort to obtain the money with which to pay off the loan then covering the property she discussed said matter with Mr. Luker, who, acting for himself and his wife, Alice Luker, entered into an oral agreement with her substantially as follows:

(1) That Mr. Luker represented to her that he had conferred with the attorney who was acting for the owner and holder of the note and mortgage and had ascertained the exact amount it would take to pay off said note and obtain a release of said mortgage; that said Luker stated that if the title to the property were placed in his name by proper deed that he could and would obtain a loan which would enable her to pay off the existing indebtedness; that thereupon she and the said Luker agreed that she would execute and deliver to him a deed, conveying to him the title to the premises, and that Mr. Luker, upon receiving said deed, would thereupon, together with his wife, sign a note to a lender willing to lend sufficient funds to pay the indebtedness against the property, and that they would execute and deliver to such lender a mortgage as security and obtain a release of the existing mortgage and thereafter Luker and wife would, when the new mortgage had been paid off, reconvey to plaintiff the title to the property, so that the title would appear on record to again become vested in her, and that the new mortgage was to be paid off by monthly installments of $35.00 on the 15th day of each and every month; that said property was to be rented to

tenants and that the rentals would be collected to be applied to the payment of the note and mortgage executed by Luker and wife.

(2) That after the delivery of the deed Mr. Luker and his wife signed and delivered to a third party a note and mortgage in the sum of $1075.00, dated on or about January 15, 1940, which mortgage was recorded January 16, 1940, in Book 65 of Mortgages, page 397, mortgage records of Bannock County, Idaho, and that the proceeds of the new loan were used in repaying the amount due on the old note and mortgage and in obtaining a release and satisfaction thereof.

(3) That thereafter said property was rented and that the rentals thereof were paid to Mr. Luker in the sum of $35.00 a month and were by him applied on the payment of the new note; that later on Mr. Luker occupied said premises himself and that the indebtedness he and his wife had incurred against said property was discharged and released of record on or about January 15, 1943; that at the present time there is no further encumbrances against said real property and respondent is the lawful owner thereof, free from any indebtedness and free from any claims or interest therein by appellants; that the deed was delivered to said Luker without his paying respondent any consideration therefor and was delivered to him by reason of the confidence and the faith respondent reposed in him and the agreement above outlined and in reliance thereon, and that upon respondent's demanding him so to do, he, together with his wife, would execute and deliver to respondent a deed reconveying to her said real property, and in this connection that said Luker repeatedly promised and agreed with respondent that he would deliver to her such deed; that the said Luker requested and received from respondent $5.00 upon his express promise that with said money he would have a deed prepared, describing the property and naming respondent as grantee therein and reconvey to her the title to said property, but that notwithstanding repeated promises made by him to place the title to said property again in the name of respondent, the said Luker, intending to defraud respondent, and in violation of his repeated promises so to do, has failed and refused to make and deliver such deed and now states and claims that he is the owner of said premises and claims them as his own. Re-

spondent further alleges that the value of said real property is $3500.00 and that she has in all respects fully performed her part of the oral agreement entered into between her and appellants, but that appellants have failed and refused to perform their part, in that they have failed and refused, after demand, to execute and deliver to her a deed reconveying to her the record title to the real property involved and that, if relief is not granted to her it will operate as a fraud upon respondent and that because of the condition of the property and its location and the purposes for which it may be used by respondent, she alleges that she cannot be fully compensated by recovery of damages in a court of law and seeks complete performance of said contract on the part of the appellants, but that in the event the court should decline to order specific performance that then respondent have and recover of and from appellants, and particularly appellant Lorenzo Luker, damages in the sum of $3500.00.

Appellants filed general and specific demurrers subsequently overruled by the Court. November 18, 1943, appellants filed their answer in which they admitted that respondent had applied to Mr. Luker for assistance in securing a loan on the premises but denied all the material allegations of the complaint, in which it was alleged that there was any agreement to the effect that after securing the loan and payment thereof the appellants were to reconvey the property to respondent, and among other things it was admitted that respondent and appellant Luker agreed that respondent would execute and deliver to him a deed conveying the property, and admitted that after the receipt of said deed appellants executed a note and mortgage on or about January 15, 1940, in the sum of $1075.00, which mortgage was filed for record, and admits that the money obtained therefrom was used in discharging the mortgage then on said property, and admits that after receiving said deed appellants rented the property at $35.00 per month and that they later occupied it themselves, and that the mortgage placed upon the property by appellants was subsequently discharged and released. Appellants deny that respondent is the lawful owner or holder of said property and alleged that appellants are the owners in fee of said property, free and clear of any claim of respondent.

As a first separate and affirmative defense to respond-

ent's complaint, appellants admit that respondent came to Lorenzo Luker and advised him that there was a real estate mortgage on her property and that the holder thereof had placed the same in the hands of an attorney for collection; that she had interviewed a number of people to see if she could borrow money to pay the mortgage or if she could sell the property and that she was unable to do either, and requested Luker to ascertain the amount necessary to pay the mortgage and attorney's fees and that appellant Luker complied with said request. That on January 2, 1940, respondent came to appellants and offered to sell said property, together with certain of the furniture and fixtures, for the sum of $1375.00, $1075.00 of which was to be used for discharging said mortgage and attorney's fees and $300.00 to be paid to respondent as her remaining equity in said real and personal property. That at that time appellants accepted said offer and reduced the agreement to writing, of which the following are excerpts:

Mrs. Chatterton agrees to sell house and lot, including furniture, for which there is to be a bill of sale and list of furniture, for $1375.00, $1000.00 to be paid Mr. and Mrs. Scott, $75.00 attorney's fees for handling the business for Scotts; the $75.00 to be applied to Mrs. Chatterton's balance and Mr. and Mrs. Luker given credit for the same; $300.00 to be paid Mrs. Chatterton after the $1075.00 paid to Mrs. Van Wormer, with interest (Mrs. Van Wormer was the mortgagee in the new mortgage), and Mrs. Chatterton to deliver a bill of sale on receipt of the $300.00 paid to her for her interest in said property and furniture. The $300.00 is not to draw over 1% interest and with the $1075.00 paid, with interest, and the $300.00, Mr. and Mrs. Luker are to own the said property and Mrs. Chatterton agreed to turn the deed to the property to Mr. and Mrs. Luker, so they can borrow the money, and after paid in full the Lukers to keep all mentioned above for their own. Mrs. Chatterton is going to lose this property for the mortgage to Scotts and said she would sooner Luker have it for favors Luker gave them when husband was in the hospital and at death rather than anyone else that she knows of.

The foregoing purported agreement was written in an old ledger by Mr. Luker, which was introduced in evidence as an exhibit. It is unsigned and Mrs. Chatterton em-

phatically denied that she had ever seen the same and that there never was any such agreement. It is also alleged in said affirmative defense that on March 6, 1940, appellants paid respondent the said sum of $300.00, being the balance of said $1375.00 purchase price of the real and personal property, and that they have fully performed each term and condition of the agreement between them and the respondent regarding the sale by respondent and the purchase by them of said real and personal property and have paid respondent the full consideration agreed to be paid for said real and personal property, and that the transaction was carried out in full and in accordance with the said agreement pertaining to said sale by respondent to appellants, which agreement is the written agreement heretofore referred to; and that at the time of the commencement of this action respondent had no right, title interest or claim in or to said real or personal property and the appellants were the absolute owners in fee of the real property described in respondent's complaint.

As a second separate and affirmative defense, it is alleged that respondent is estopped from now asserting any right, title or claim in or to the said real or personal property.

As a third separate and affirmative defense it is alleged that respondent is guilty of laches and it would not be equitable for her to now be permitted to make any claim of any right or title in or to the property described in her complaint.

As a fourth separate and affirmative defense it is alleged that respondent's alleged cause of action is barred and unenforceable by the provisions of Sections 16-503 and 16-505, I.C.A.

November 27, 1943, respondent filed an affidavit in which it is set out that she has read a copy of the purported written agreement contained in appellants' answer and denies said purported contract and makes her denial in harmony with the provisions of Section 5-704, I.C.A. Bills of particulars were demanded and filed by both respondents and appellants.

The record in this case is voluminous and undoubtedly contains much that is not necessary in a determination of

the question presented. The question involved is well stated by the trial judge in sustaining an objection to the admission of certain testimony, when he said:

"I think, gentlemen, the important thing here and probably the only important one is what the agreement was with respect to the title of this property, whether or not this deed was a conditional deed, or an absolute deed intending to convey the absolute title to be permanently vested in the grantee. These other matters of indebtedness don't seem to me really important or material at all so far as this case is concerned."

July 19, 1944, the trial court made and entered findings of fact, conclusions of law and decree and found in favor of respondent on all the material allegations of her complaint and also found that respondent is not estopped from asserting her title to said real or personal property, and is not guilty of laches and that it is not inequitable for her to be permitted to make claim of her right or title to the property described in her complaint; that the respondent's cause of action is not barred or unenforceable by the provisions of Section 16-503, I.C.A., 1932, or the provisions of Section 16-505, I.C.A., 1932, and acts amendatory thereof; that on all other issues raised by the pleadings herein the Court finds that all thereof are established by the evidence in favor of the respondent and against the appellants.

By the decree it was ordered, adjudged and decreed that respondent is the owner in fee simple of the following described real estate, to-wit:

All of Lot 6 and the Southerly half of Lot 5, lying next to and adjoining said Lot 6, all in Block 213 of the Townsite of Pocatello, Idaho,

and that the appellants have no title thereto or interest therein; that the appellants Lorenzo Luker and Alice Luker, his wife, forthwith sign and acknowledge a deed in satisfactory and sufficient form wherein appellants are grantors and respondent is grantee, describing in said deed the real estate above described, and that appellants deliver or cause to be delivered to respondent said deed, and that upon their failure or refusal so to do that the clerk of this court is authorized to make, execute and deliver for and on behalf of the appellants said deed, wherein respondent is the

grantee, and that thereupon the title to said real estate shall continue to vest in respondent and that the appellants have no interest therein. That the appellants have and recover from the respondent the sum of $386.00, being the difference between the rental value of the above premises from January 15, 1940, to July 1, 1944, and the sums expended by the appellants in money or materials or labor on said above described property, but that so long as appellants continue to occupy or use said property or hold possession thereof after July 1, 1944, that respondent receive credit on said $386.00 at the rental value of $35.00 per month.

August 4, 1944, appellants appealed from the final judgment made and entered July 19, 1944. Of the various assignments of error urged by appellants, we think the asserted errors of the trial court are substantially contained in Assignment "No. I.", as follows:

"The court erred in overruling defendants' general and special demurrers for the reason that the facts stated are not sufficient to constitute a cause of action and the complaint shows, on its face, that the alleged oral agreement was for the conveyance of an interest in real property not to be performed within a year and was an oral express trust agreement not enforceable in law or in equity, and the complaint shows on its face that the alleged oral agreement was the creation of an express trust and was barred and unenforceable by the provisions of the Statutes of Fraud, Sections 16-503, and 16-505, subdivisions 1 and 5, I.C.A.; that the complaint sets forth no facts constituting fraud or facts sufficient to show a resulting trust."

It is strenuously contended by appellants that the asserted agreement between respondent and appellants is within the provisions of Section 16-503, I.C.A., and paragraphs 1 and 5 of Section 16-505, I.C.A. Section 16-503, I.C.A., is as follows:

"No estate or interest in real property, * * * can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, * * *."

Paragraphs 1 and 5 of Section 16-505, I.C.A., are as follows:

"In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence therefore, of the agreement can not be received without the writing or secondary evidence of its contents:

"1. An agreement that by its terms is not to be performed within a year from the making thereof.

"* * * *.

"5. An agreement for * * * the sale, of real property, or of an interest therein, * * *."

The respondent contends that even though it is an oral agreement there was a part performance, and that it does not come within the statute of frauds but is within the provisions of Section 16-504, I.C.A., which is as follows:

"The preceding section must not be construed to affect * * *, nor to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof."

The above-mentioned sections are the same as Sections 1971, 1972 and 1973 of the California Code of Civil Procedure.

■ A statute adopted from another state will be given the construction and meaning given it by the courts of that state prior to its adoption, unless such construction is clearly unreasonable. (*Caldwell v. Thiessen,* 60 Ida. 515, 92 P. (2d) 1047; *In re Kostohris' Estate* (Mont.), 29 P. (2d) 829; *McDonald v. Lambert* (N.M.), 85 P. (2d) 78; *State v. Taylor,* 59 Ida. 724, 87 P. (2d) 454; *Norville v. State Tax Commission* (Utah), 97 P. (2d) 937; *McHenry v. Hubbard* (Kan.), 134 P. (2d) 1107; *In re Raat's Estate* (Utah), 132 P. (2d) 136; *State v. Thierfelder* (Mont.), 132 P. (2d) 1035.)

■ In the trial court's memorandum decision, dated May 6, 1944, it is said:

"One of the principal contentions on behalf of the defendant in this case is that the alleged oral agreement

set forth in the complaint as entered into constitutes an attempt to create an express trust, and is void and unenforceable because it is in violation of Section 16-503, I.C.A. It would appear that the defendant is not in a position to urge this defense for reasons hereinafter stated. However, I do not interpret the agreement alleged by the plaintiff as an attempt to create an express trust. But even (if) it be conceded that plaintiff attempted to create an express trust which fails by reason of the fact that it was not reduced to writing she is not without a remedy.

"As I view the matter this case does not come within the terms of the statute of frauds at all.

"Where a party has so acted in reliance upon a contract that it would result in a fraud upon him to allow the other party to repudiate the contract equity will view the matter as having been removed from the operation of the statute of frauds, and will enforce the contract by decreeing specific performance of it, or by granting other appropriate relief such as quieting title, or establishing a resulting or constructive trust.

"*Tsuboi v. Cohn*, 40 Ida. 102, 231 P. 708; 27 C.J. 343, Sec. 427; 58 C.J. 986, Sec. 170; *Wolf v. Eagleson*, 29 Ida. 177, 157 P. 1122; *Hanger v. Hess*, 49 Ida. 325, 288 P. 160; *Bryant v. Mayhan*, 264 P. 811; 1 Perry on Trusts, Sec. 166; 3 Pom. Eq. Jur. 1053; *Aker v. Aker*, 52 Ida. 713, 20 P. (2d) 796, it was held:

" 'Resulting trust may be established by operation of law if party fails to establish express trust not in writing.' (64 C.J. 373-75, Sec. 150, and cases there cited.)

"The parties agree that they acted upon an oral agreement arrived at in advance of the deeding of the property to the defendant by the plaintiff. Their disagreement is as to the terms of the contract, the plaintiff claiming that the defendant agreed to reconvey when the rents collected were sufficient to pay off the mortgage indebtedness, taxes and expenses incidental to the conveyance and handling of the property, and the defendant contending that the conveyance was absolute, the consideration therefor being payment of the mortgage indebtedness against the prop-

erty and an additional sum of $300.00 to be paid directly to the plaintiff.

"* * * *.

"The defendant offered positive testimony in support of his contention that he had fully performed on his part, including payment to the plaintiff of the said sum of $300.00. On the other hand the plaintiff testified that the defendant had not paid her any money whatever on any account.

"* * * *.

"The burden of proving this payment was on the defendant. In view of the care which the defendant is shown to have taken in connection with other matters relating to this case it is difficult to believe that he would have paid the plaintiff the sum of $300.00 in currency without obtaining a receipt acknowledging such payment. In view of the positive denial of the plaintiff, and other attendant circumstances shown in the evidence, I feel constrained to hold that the evidence is insufficient to establish such payment.

"It is my conclusion that the defendant acquired the deed to this property under a promise upon his part that when the rentals therefrom were sufficient to liquidate the indebtedness, pay taxes, reasonable upkeep, and other expenses incident to the conveyance and mortgaging of the property, he would reconvey the property to the plaintiff.

"* * * *.

"It is therefore ordered that the plaintiff have judgment requiring the defendants to reconvey the said property to her, free of encumbrance, and that plaintiff have judgment for costs."

As supporting the correctness of the trial court's findings and decision, we submit the following authorities.

In the case of *McGinn v. Willey* (Cal.), 141 P. 49, it is said:

"Additional citation is not required, as the principle is familiar. Indeed, express statutory authority for its application is found in section 1972 of the Code of Civil

Procedure, which, in referring to section 1971, requiring every 'transfer of real property to be in writing', provides:

" 'The preceding section must not be construed * * * to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof.'

"We deem it unnecessary to notice specifically the cases cited by appellant, as they are not at all inconsistent with the position of respondent. Of course the trial judge is clothed with wide discretion in according or withholding specific performance. This necessarily follows, as the judgment must depend upon the impression made by the particular circumstances of the case upon his sense of justice and equity. We naturally expect and find, therefore, opposite conclusions reached in some cases involving apparently slight differences as to the facts. But where there has been a part performance, and the lower court has decreed the complete execution of the agreement, an appellate court should not interfere, unless it appears clearly that the decision is inequitable and unjust. * * *."

In the case of *Van Winkle v. Van Winkle,* 56 Ida. 588, 57 P. (2d) 692, it is said:

"If there has been sufficient part performance of this agreement to bring the case within the exception to the statute of frauds (section 16-504, I.C.A.; *Havlick v. Davidson,* 15 Ida. 787, 791, 100 P. 91; *King v. Seebeck,* 20 Ida. 223, 118 P. 292; *Wolf v. Eagleson,* 29 Ida. 177, 157 P. 1122), the consummation of the agreement might be eventually enforced by action for specific performance in which eventuality this transfer could not be adjudged fraudulent. The validity of the transfer cannot be determined solely upon what occurred at the time of the execution, either of the deed in 1931 or the correction thereof made in 1933. The good faith or fraudulent character of the conveyance must be determined on all the facts arising from the time of the original agreement between appellant and his father down to the time of the execution of the deed. The former can no more be disregarded than the latter." (*Washington State Hop Producers v. Riel, et al,* (Wash.), 148 P. (2d) 847; *Houger v. Hess,* 49 Ida. 325, 288 P. 160; *Nelson v. Altizer,* 65 Ida. 428, 144 P. (2d) 1009.)

In the case of *Public Market Company of Portland v. City of Portland, et al*, (Ore.), 83 P. (2d) 440, it is said:

"In passing upon this demurrer, it must be borne in mind that the subject-matter of this contract is land and the relief sought is the specific performance of a contract for the sale of land. The controversy, therefore, was in respect to a matter over which a court of equity has exclusive jurisdiction and, for that reason, there could be no accounting in a law action. That a court of equity has jurisdiction to enforce specific performance of this contract is elementary.

" '* * * Where land, or any estate therein, is the subject-matter of the agreement, the equitable jurisdiction is firmly established. Whenever a contract concerning real property is in its nature and incidents entirely unobjectionable—that is, when it possesses none of those features which, as we shall see, appeal to the discretion of the court, it is as much a matter of course for a court of equity to decree a specific performance of it, as it is for a court of law to give damages for the breach of it.' (Pomeroy's Specific Performance of Contracts, 3d Ed., sec. 10; *Larrabee v. Bjorkman*, 79 Ore. 467, 155 P. 974, 976; *Spencer v. Bales*, 108 Ore. 339, 216 P. 746; *Slattery v. Gross*, 96 Ore. 554, 187 P. 300, 190 P. 577.)

"* * * The contention that the plaintiff has a complete and adequate remedy at law, even if true, would not oust the court of its equitable jurisdiction in this case, for the reason that the case is one which comes within the exclusive jurisdiction and not the concurrent jurisdiction of a court of equity. It is only in cases where a court of equity has concurrent jurisdiction with courts of law that an adequate legal remedy will deprive the court of its equitable jurisdiction. The distinction between the two classes of cases is plain. Where a court of equity has concurrent jurisdiction with courts of law, equity loses its jurisdiction if the plaintiff has a complete and adequate remedy at law, while in those cases coming within the exclusive jurisdiction of a court of equity, the adequacy or inadequacy of the legal remedy is of no importance for the court retains its equitable jurisdiction regardless of that fact." (See, also, 1 Pomeroy's Equity Jurisprudence, 3d Ed., Sec. 139.)

In the case of *McCubbins v. Simpson, et al,* (Okla.), 98 P. (2d) 49, it is said:

"It is the rule in this jurisdiction that specific performance of a contract is not a matter of right but a question of equity and the application is addressed to the sound legal discretion of the trial court and controlled by the principles of equity in full consideration of the circumstances in each case. (*Crutchfield v. Griffin,* 139 Okla. 35, 280 P. 1075; *Miller v. Roberts,* 140 Okla. 271, 282 P. 1104; *Vanlandingham v. Newberry,* 104 Okla. 98, 230 P. 726; *Hurst v. Champion,* 116 Okla. 228, 244 P. 419; *Robinson v. Haynes,* 147 Okla. 95, 294 P. 803.)

"In 65 A.L.R. 9, appears the following note:

" '* * * Giving a literal interpretation to the expressions of the courts upon the subject there appears a remarkable harmony of opinion to the effect that the granting of relief by a decree or judgment requiring specific performance of a contract rests in the "sound" or "judicial" discretion of the court.' "

In the case of *Anderson v. Anderson* (Kan.), 88 P. 743, 745, 9 L.R.A. (N.S.) 229, it is said:

"Whether equity will decree the specific performance of a contract rests entirely in judicial discretion, and always upon the facts of the particular case." (*Bahney v. Gross, et al,* (Kan.), 10 P. (2d) 844.)

In the case of *Temple Enterprises, Inc. v. Combs, et al,* (Ore.), 100 P. (2d) 613, it is said:

"Coming now to the defendants' claim that it would be inequitable to grant specific performance in this case and that the court should exercise its discretion to refuse the remedy, it must be remembered that the discretion of a court of equity in cases of this character is judicial in its nature and the relief is not 'of grace'; that, within the domain of equity, judicial remedies are not in any true sense discretionary but are governed by the established principles and rules which constitute the body of equity jurisprudence. (*Wetherby v. Griswold,* 75 Ore. 468, 474, 147 P. 388; *Hawkins v. Doe,* 60 Ore. 437, 446, 119 P. 754, Ann. Cas. 1914 A, 765; Pomeroy's Specific Performance of Contracts 114, 116, Secs. 36, 37.) We do not find in

this record any of those elements which should deter the granting of the relief sought." (See, also, *Harris v. Craven,* (Ore.), 91 P. (2d) 302.)

In the case of *Tsuboi v. Cohn,* 40 Ida. 102, 231 P. 708, it is said:

"Even if appellants were correct in their contention that the agreement in question was one for the sale or lease of an interest in land, the statute of frauds would have no application for the reason that both parties to the oral agreement recognized its validity and acquiesced in its terms by erecting the fence and maintaining it for three years and the doctrine of part performance would take it out of the statute of frauds. Where one party to an oral contract has, in reliance thereon, so far performed his part of the agreement that it would be perpetuating a fraud upon him to allow the other party to repudiate the contract and to set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute. (27 C.J. 343, sec. 427.)"

In the case of *King v. Seebeck,* 20 Ida. 220, 118 P. 292, it is said:

"Then, conceding that the contract sued on is a contract in regard to real estate, under the provisions of Sec. 6008, Rev. Codes, the court erred in not admitting the evidence offered. Said Sec. 6008 provides that Sec. 6007 must not be construed to affect nor to abridge the power of any court to compel the specific performance of any agreement in case of part performance thereof." (See, also, *Houser v. Hobart,* 22 Ida. 735, 127 P. 997; *Van Winkle v. Van Winkle,* supra; *Hill v. Den* (Cal.), 53 P. 642.)

In *Wolf v. Eagleson,* 29 Ida. 177, 157 P. 1122, it is said:

"It is obvious that there is ample evidence to the effect that Wolf made a part performance at least of the second contract. He gave a quit claim deed to Eagleson for the 160 acres which the latter desired to sell to Larson, and he surrendered possession. This took the contract out of the statute of frauds and made it both provable and enforceable."

Assignment Number XI is as follows:

 

"That the court erred in entering its Decree of specific performance and said judgment was erroneous upon the grounds that the evidence *is wholly insufficient* to support and sustain the said Findings of Fact and Judgment and that there *is no competent evidence sufficient* to support the same and the Findings of Fact and Decree are directly against the written evidence and all the evidence and are in utter disregard of the overwhelming evidence, and that the evidence is so insufficient upon the reasons and grounds herein set forth in all these Assignments of Error, which grounds and reasons are hereby by reference referred to and made a part of this Assignment, as if set forth at this point." (Italics theirs.)

 We think all that need be said relative to the evidence, or the sufficiency thereof, is governed by the following authorities:

The recent case of *Checketts v. Thompson,* 65 Ida. 715, 152 P. (2d) 585, wherein it is said:

"This Court has repeatedly held that where conflicting evidence is submitted to a trial court sitting without a jury, either as a court of law or as a court of equity, the findings of the court on questions of fact will not be disturbed where there is competent evidence to support them. (*Viel v. Summers,* 35 Ida. 182, 209 P. 454; *Davenport v. Burke,* 30 Ida. 599, 167 P. 481; *Lus v. Pecararo,* 41 Ida. 425, 238 P. 1021; *Collins v. Hibbard,* 48 Ida. 178, 279 P. 619; *Snell v. Stickler,* 50 Ida. 648, 299 P. 1080; *State v. Snoderly,* 61 Ida. 314, 101 P. (2d) 9; *Roddy v. State* (Ida.), 139 P. (2d) 1005; *Picciano v. Miller* (Ida.), 137 P. (2d) 788; *McCarty v. Sauer* (Ida.), 136 P. (2d) 742."

And again, in the case of *Nelson v. Altizer,* 65 Ida. 428, 144 P. (2d) 1009, it is said:

" 'Furthermore, where the facts "might very well lead different minds to reaching different conclusions upon the issue presented; and where such is the case, however meager the evidence, if it is of a substantial nature and character (as in the instant case), the findings of the triers of fact should prevail." (*McKissick v. Oregon Short Line R. Co.,* 13 Ida. 195, 89* P. 629; *Fleenor v. Oregon Short Line R. Co.,* 16 Ida. 781, 803, 102 P. 897; *Denton v. City of Twin Falls,* 54 Ida. 35, 43, 28 P. (2d) 202; *Call v.*

*City of Burley,* 57 Ida. 58, 62 P. (2d) 101, 105.' (*Dickey v. Clarke* (Ida.), 142 P. (2d) 597, 602.")

And, again, in the case of *Wieri v. Anaconda Copper Mining Co.* (Mont.), cited as 156 P. (2d) 838, it is said:

"On the review of a decision of the District Court the presumption is that the decree of that court is correct (citing cases), and that its judgment will not be set aside unless there is a clear preponderance of the evidence against it."

The record and the findings of the trial court clearly indicate that respondent fully performed her part of the agreement. Nothing remained for her to do, nor can it be said that appellants will sustain any damage in completing their part thereof. The decision of the trial court is equitable and just. The assignments of error are all more or less predicated upon the theory that the agreement came within the statute of frauds and, therefore, was unenforceable. The trial court having determined that there was no merit in appellants' contention, in which we concur, it is unnecessary to further consider the same. The judgment of the trial court is affirmed. Cost awarded to respondent.

Ailshie, C.J., Budge, Givens, and Holden, JJ., concur.