BOEHS v. ADELMAN et al.

No. 32775.   Nov. 18, 1947.

Rehearing Denied Jan. 6, 1948.

*188 P. 2d 196.*

Sparks, Boatman & Farrier, of Woodward, for plaintiff in error.

Arney & Barker, of Clinton, for defendants in error.

ARNOLD, J.   Peter J. Boehs brought this suit against L. T. Adelman and others for specific performance of a contract for the sale of real estate. Judgment was for defendants, and plaintiff appeals.

The property involved consisted of 160 acres of land in Major county. It was a part of the estate of A. Adelman, deceased, who died in 1923. There had been no administration of his estate and no judicial determination of heir-

ship. L. T. Adelman is a son of the deceased, A. Adelman.

Plaintiff relies upon a contract alleged to have been created by correspondence between plaintiff and defendant L. T. Adelman. The letters relied upon as evidencing the contract and its breach were written and mailed between November 30, 1943, and February 5, 1945. This suit was commenced March 3, 1945.

For reversal of the judgment plaintiff argues two propositions in his brief stated as follows:

"Does the evidence show a valid contract of sale and purchase of real estate between L. T. Adelman and the plaintiff?"

"If a valid contract existed, did the trial court err in refusing to decree specific performance thereof?"

If the first of these propositions shall be sustained, the second follows as a natural sequence since no question is raised of fraud, accident, mistake or limitation. Before considering the correspondence between the parties and its sufficiency to evidence the existence of enforceable legal relations between them, it is well to have in mind certain statutory provisions relating to the creation of contracts. By 15 O. S. 1941, ch. 1, §51, it is provided:

"The consent of the parties to a contract must be:

"1. Free.

"2. Mutual; and

"3. Communicated by each to the other."

Section 66, Id., provides:

"Consent is not mutual unless the parties all agree upon the same thing in the same sense. . . ."

Section 71, Id., requires that:

"An acceptance must be absolute and unqualified, . . . A qualified acceptance is a new proposal."

On November 30, 1943, plaintiff wrote a friendly letter to the defendant, ending with the inquiry if the Major county farm was for sale and if so at what price. In his reply dated December 4, 1943, defendant advised that he was asking $2,600 for the farm, with one-half of oil rights reserved, or $3,000, buyer to take all. Answering this letter on December 24, 1943, plaintiff called attention to the cutting of considerable timber from the land and then said:

"I feel I can give $2500.00 for the farm with you keeping the 1-16 oil rights for a term of years 15 or 20 yrs.

"I could not use it at the $3000.00 figure. And $2500 is all I feel justified in paying under the other conditions.

"Of course I figure if I should buy it I would expect the title to it be put in shape so I can get a loan on it."

Under date of January 18, 1944, defendant wrote to plaintiff as follows:

"I still think we ought to have 2600 for the place as the Tarm acre is worth that, if you want it you can have a Deed fixed up, 20 year 1-2 oil rights, and us keep this years crop, as we cant get the Deed fixed up untill about harvest as I will half to send it all over the U S A to get it. We could fix it so you could get the wheat land after harvest but I amagin Ivan would want to stay there untill the first of the year. . . .

"If you want it put up 100 in the bank to cover costs of getting Deed and Abstract to be paid when Deed is fixed up. . . ."

Plaintiff thereafter deposited $100 in the Fairview State Bank and had the bank notify defendant by mail that the money was on deposit and requesting certain information, such as names of other heirs, needed in preparing the deed. Defendant acknowledged receipt of this letter on February 8, 1944, and on February 28, 1944, furnished the bank the required information. In this letter defendant said:

"It will take quite a while to get the deed all signed up, so he will just half to rest easy."

He also requested the bank to furnish him with a statement of the taxes due so he could pay them. March 6th plaintiff wrote defendant that the bank had called his attention to the letter of February 28th. In this letter plaintiff stated:

"I got the tax statement for you please find it enclosed.

"When returning the deed send it to the Bank as they are making me a loan to pay you out as soon as we can have the deal complete, as stated in the terms in our contract. Except the oil rights under the hold farm is you so prefer."

Under date of March 30, 1944, defendant wrote plaintiff as follows:

"Well, I have got the ball rolling but it is going to take time

"If I happen to come down there I will come and see you we are having a quit clame deed signed to me and then I will take it to court to quiet title that is about the only way to get a good deed. You can write me any time you wish I will try and keep you informed as to progress"

Plaintiff heard nothing further from defendant until he received the letter dated February 5, 1945, in which defendant stated in substance that he had purchased the full title to the land in partition proceedings and had conveyed the same to his son, Keith Adelman, and that he would not convey to plaintiff.

Pursuant to a conversation with defendant in the summer of 1944 at Fairview, plaintiff that fall took possession of a part of the land and sowed it to rye and also watered his cattle at the water well thereon as shown by his letter to defendant dated November 30, 1944.

In the meantime defendant found that he could not get all of the heirs to join in a deed to him so that he could convey to plaintiff and he then commenced proceedings for partition. Commissioners appraised the land at $2,500 and defendant elected to take at the appraised value and sheriff's deed was executed and delivered to him January 18, 1945, in conformity with the final decree in partition. On the same day the warranty deed to Keith Adelman was delivered. It is disclosed by the record that the partition proceeding was begun August 7, 1944, before all of the heirs had been heard from in reference to signing the deed. Inconsistent with this fact disclosed by the record is defendant's own statement on the witness stand that if all the other heirs had signed the quitclaim deed to him he would have carried out his agreement to convey the land to plaintiff for $2,600 and one-half of the mineral rights for a period of 20 years. He thus acquired the interests of the other heirs just as effectively as if they had joined in the quitclaim deed to him. He testified that he gave no notice to plaintiff as to his intention to rescind.

In the case of McCubbins v. Simpson et al., 186 Okla. 417, 98 P. 2d 49, this court said:

"It is the rule in this jurisdiction that specific performance of a contract is not a matter of right but a question of equity and the application is addressed to the sound legal discretion of the trial court and controlled by the principles of equity in full consideration of the circumstances in each case. Crutchfield v. Griffin, 139 Okla. 35, 280 P. 1075; Miller v. Roberts, 140 Okla. 271, 282 P. 1104; Vanlandingham v. Newberry, 104 Okla. 98, 230 P. 726; Hurst v. Champion, 116 Okla. 228, 244 P. 419; Robinson v. Haynes, 147 Okla. 95, 294 P. 803."

In paragraph 1 of the syllabus to this case it is stated:

"The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. The right to it depends upon elements, conditions, and incidents generally regarded as essential to equitable relief; when these exist, the remedial right is perfect in equity."

We think these requirements to the existence of a perfect right to equitable relief are shown by the record in this case unless it can be said that Keith Adelman was an innocent purchaser in good faith without notice of plaintiff's claim. Although a defendant in the case, against whom affirmative relief was sought, Keith Adelman did not testify upon the trial.

From the testimony of L. T. Adelman it is fairly inferable that Keith knew all about the agreement between his father and the plaintiff and that he took his title to the land fully cognizant of the mutual obligations of that agreement. On cross-examination he testified:

"Q. You had talked to Keith about the transaction with Mr. Boehs? A. I suppose so. Q. You talked over those letters Mr. Boehs wrote to you? A. I suppose so. Q. And talked over some things you wrote back to Mr. Boehs? A. I presume so. Q. About what the terms were and the substance of the agreement with Mr. Boehs? A. I don't know that we came out and talked about it but he could read the letters. Q. He read some of them himself? A. He probably has."

It is significant that the sheriff's deed to L. T. Adelman and the latter's deed to Keith were executed the same day and filed for record within two minutes of each other. With reference to the consideration for Keith's deed the witness testified that Keith had helped him with his farm work during the war when other help could not be had and that such services had been of great value. However, he further testified that during the pendency of the partition proceeding he had conveyed to Keith 480 acres of other land, the least valuable portion of which was worth $10 per acre.

We think that these facts and circumstances shown by the testimony of L. T. Adelman as a witness in his own behalf establish beyond reasonable controversy that Keith was not an innocent purchaser for value without notice of plaintiff's rights.

Plaintiff by his pleading tendered into court the full purchase price of $2,600 and prayed that his contract as alleged be established and that its specific performance be decreed; that the deed to Keith Adelman covering this 160 acres be canceled of record; that he have judgment for rents and profits on the land for costs.

The judgment of the trial court is reversed and the cause is remanded, with directions to enter a decree for plaintiff as prayed for in conformity with the views herein expressed and that such further proceedings be taken as may be necessary to determine and settle the question of rents and profits as between the parties.

Rehearing Denied Jan. 6, 1948.