## DAVIDSON et al. v. ROBERSON.

No. 13786—Opinion Filed Sept. 18, 1923.

1. **Indians—Kiowa Allotment — Conveyance by Heir—Validity.**

Where a full-blood Kiowa Indian, to whom an allotment of land is set apart by the United States of America, and conveyed by a trust patent under which the land allotted is held in trust for the use and benefit of the allottee for a period of 25 years, dies before the expiration of the trust period, under the provisions of article 4223 and article 4226, U. S. Compiled Statutes of 1918, the approval by the Secretary of the Interior, on December 17, 1921, of a deed executed on June 22, 1908, and during the continuance of the trust period by the heir of the allottee, purporting to convey the inherited interest of such heir in said land, operates as a matter of law to pass the full title in said allotment to the purchaser.

2. **Specific Performance — Contract to Purchase Land.**

Record examined, and held, that the written contract in the instant case is sufficiently definite and certain in its terms to support a decree for specific performance.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action by W. Hayne Roberson against Samuel Davidson and Grady Jackson to enforce the specific performance of a written contract. Judgment for plaintiff, and defendants bring error. Affirmed.

W. M. Howenstein, for plaintiffs in error.

Wilson & Roe, for defendant in error.

Opinion by FOSTER, C. On the 20th day of December, 1920, the defendant in error, W. Hayne Roberson, as plaintiff below, filed suit in the district court of Tillman county, Okla., against plaintiffs in error, Samuel Davidson and Grady Jackson, defendants below, to compel the specific performance of a written contract for the sale of a half section of land, located in Tillman county, Okla. The parties will be referred to as they appeared in the court below.

The contract which the plaintiff sought to enforce is as follows:

"Exhibit 'A.'

September 17, 1920.

"This agreement made and entered into between W. Hayne Roberson, vendor, and Samuel Davidson and Grady Jackson, vendees, as follows: W. Hayne Roberson has sold and agrees to convey to the said Davidson and Jackson the northeast quarter of section 13, four (4) south, range sixteen (16) and the southeast quarter of 13, four (4) south, range 16, for the sum of $26,000 on the following terms: The said Davidson and Jackson have deposited a certified check of $1,500, as part payment of a payment of $10,000 to be met on or before December 1, 1920. The balance, $16,000, to be met by second mortgage on the above described lands after a first mortgage of approximately $7,500 is deducted. The said second mortgage to bear interest at eight (8) per cent. per annum and payable annually and become due in five (5) years. The said Roberson withholds a one-half interest in the mineral contained in said lands for 25 years after which time said mineral reverts, and a five year lease on the said lands.

"Witness our hands the year and day first above written.

"(Signed)

"W. Hayne Roberson,
"Samuel Davidson,
"Grady Jackson,
"Will Fondren, Agent.

"September 17; 1920.

"Referring to a previous contract by and between W. Hayne Roberson, and S. H. Davidson and G. L. Jackson on the sale of the east half of section 13-4-16. The said Roberson agrees to pay the taxes for the current year and the approaching amortization payments due within 60 or 90 days and to pay the said Davidson and Jackson the third of all grain crops and the one-fourth of the cotton crop on said lands for the year 1921. The said Roberson to have the crop for the current year (1920).

"(Signed)

"W. Hayne Roberson,
"Samuel Davidson,
"Grady Jackson."

The petition alleges that the defendants had paid some $1,500 to apply on the purchase price of the land about the time the contract was entered into, but that on the 1st day of December, 1920, they wrongfully and in violation of the terms of the contract refused to comply with the terms of the contract and still refuse so to do, although the plaintiff on the 1st day of December, 1920, offered to convey and still offers to convey a good and merchantable title by sufficient warranty deed to the property and tenders such deed into court for the benefit of the defendants and that plaintiff has repeatedly offered to comply with the terms of his contract. The prayer of the petition was for the specific performance of the contract.

The answer of the defendants was, first, a general denial; second, that in addition to the written contract, the execution of which was admitted, the plaintiff agreed to furnish and submit to the defendants on or before the 1st day of December, 1920, abstracts of title covering said property, which the plaintiff failed to do: and, third, that there were material defects in plaintiff's title to the real estate which he agreed to convey, and that said plaintiff on the 1st day of December, 1920, did not have, and at the time of the filing of the answer did not have, good and merchantable title to said real estate.

The reply of the plaintiff was a general denial of the new matter appearing in the answer, and pleading that the defendants were estopped from claiming a defect of title by reason of their failure to direct plaintiff's attention to any defect therein.

The cause was tried to the court without the intervention of a jury on the 14th day of October, 1921. The defendants objected to the introduction of any testimony on the part of the plaintiff, for the reason that the petition failed to state a cause of action, which objection was overruled by the court and exceptions allowed. At the conclusion of the plaintiff's testimony, the defendants interposed a demurrer to the evidence, the same being overruled and exceptions allowed.

Thereafter, on the 21st day of March, 1922, the court rendered judgment in favor of the plaintiff and against the defendants for the specific performance of said contract. To reverse this judgment, the defendants appealed to this court. Two propositions only are urged by the defendants as grounds for reversal: First, that the contract sued upon is so indefinite and uncertain in its terms that specific performance cannot be decreed; second, that the plaintiff is unable to deliver a good and merchantable title to the land in controversy, and that the court will not by a decree of specific performance require the vendees to accept a doubtful title or one that is not fully merchantable.

An examination of the contract in the instant case discloses that in respect of the essential ingredients of the contract, nothing is left uncertain or indefinite. The subject-matter of the contract, the half section of land in Tillman county, Okla., is fully and aptly described. The consideration which the vendees agreed to pay for the land is set out with exactness. The time and mode of making payment of the consideration is definitely set forth. The contract is dated and signed by both the vendor and the vendees. Subjoined to the contract and bearing the same date as the original agreement is a stipulation signed by the same parties, in which certain provisions relating to taxes, payments due under an outstanding mortgage, and the disposition of the grain and cotton rentals maturing from the land for the year 1921 are incorporated.

It is urged that the contract is uncertain in that it fails to show the amount of the second mortgage which the vendees were to execute to secure deferred amounts of the purchase money and the date on which the mortgage was to mature. The amount is clearly ascertainable from the face of the contract itself by a simple mathematical process and the date of maturity also ascertainable from the contract itself by the simple process of counting five years from December 1, 1920.

It is contended, further, that the contract is indefinite as to the nature of the lease which the vendor reserved to himself on the land to be covered, the contract failing to specify whether the lease was to be an agricultural or mineral lease. It is sufficient to say that when the contract is taken and construed as a whole, the original along with the subjoined portion, the court finds no difficulty in determining that the nature of the lease intended was an oil and gas lease. The context in which the reservation of the leasehold right appears shows that the parties had in mind a disposition of the mineral contained in the land, the stipulation clearly showing that the vendees were to have all of the mineral in the land subject to a reservation of the one-half interest therein to the vendor for 25 years.

Furthermore, by stipulating as was done by the parties in the subjoined part of the contract that the crop rentals for the year 1921 should inure to the benefit of the vendees makes clear to this court that the parties could not have been referring to an agricultural lease.

Attention is directed to the fact that the contract makes no reference to the terms to be incorporated in the proposed lease. It must be assumed, in the absence of any dispute as to what these terms should be, that the plaintiff was entitled in addition to the $20,000 cash consideration to a paid up oil and gas lease for the term of five years.

It is apparent that the parties themselves drew this contract without professional aid, and while the contract may not have gone as much into detail as is customary in contracts of this sort, yet we cannot find that the minds of the parties did not meet upon every essential element of the contract. We are therefore of the opinion that the contract is enforceable in an action for specific performance and that the trial court was right in overruling defendants' demurrer to the evidence.

It is next insisted that the trial court erred in decreeing specific performance because under the evidence plaintiff did not tender the defendants a good and merchantable title. The judgment of the trial court was a general finding in favor of the plaintiff upon all issues, and we are therefore unable to determine whether the trial court based its finding and judgment upon an acceptance of the title with such defects as might accompany the title, or upon the fact that the plaintiff tendered and defendants refused a good and merchantable title free from defects.

There is evidence in the record sufficient, in our judgment, to support a finding by the court that the defendants after being furnished with abstracts waived any defect if any there should be in the title by failing to object within reasonable time thereafter, and by accepting the title with notice and knowledge of the title as it stood. There is nothing in the written contract binding the plaintiff to furnish the defendants with abstracts of title for their examination.

It can serve no useful purpose, however, to review the somewhat voluminous record in this case for the purpose of determining on which side the preponderance rests. Irrespective of whether the plaintiff did or did not furnish the defendants with abstracts of title to the land in controversy on or before December 1, 1920, and irrespective of whether or not the defendants did or did not examine these abstracts after being brought down to date, approve the title and pay the plaintiff the sum of $1,500 in part payment on the purchase price, we are fully convinced upon a careful review of the whole record that the plaintiff tendered the defendants a good and merchantable title to the real estate involved.

The record discloses that the land in controversy was originally allotted to one Isabel Pope-tsait-ke of the Kiowa Tribe of Indians. This land was held by the said Isabel Pope-tsait-ke under a trust patent or deed from the United States of America, under which the land allotted was held in trust for the use and benefit of the said Pope-tsait-ke for a period of 25 years. The patent further provided as follows:

"That at the expiration of said period (meaning trust period) the United States will convey the same by patent to said Indian, in fee, discharged of said trust and free of all charge or incumbrance whatsoever, if the said Indian does not die before the expiration of the trust period, but in event said Indian does die before the expiration of that period this patent and the allotment upon which it is based shall be canceled, and the said land shall revert to the United States and be thereafter disposed of in the manner prescribed by law. Provided, that the President of the United States may, in his discretion, extend said period. * * *"

The record further discloses that on the 22nd day of June, 1908, one Pope-tsait-ke of Gotebo, Okla., heir of Isabel Pope-tsait-ke, deceased, conveyed the two quarter sections of land to the plaintiff. The deed evidencing said transfer was approved by the Secretary of the Interior on August 31, 1908, and again on December 17, 1921.

The question for our determination is, Did the deed of Pope-tsait-ke so approved by the Secretary of the Interior convey to the plaintiff the full title to said land? It is urged by the defendants that it did not in the absence of a showing of proper probate or judicial finding as to the heirs of the allottee, Isabel Pope-tsait-ke, and they introduced in evidence certified abstract of title for the purpose of showing that the title of the plaintiff rested upon the ex parte affidavits of two Kiowa Indians and of the Superintendent of the Kiowa Indian Agency, filed in the office of the Commissioner of Indian Affairs at Washington, D. C., and shown in the abstract.

Section 4223, U. S. Compiled Statutes of 1918, provides:

"The adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent, but in case of minor heirs their interest shall be sold only by a guardian duly appointed by the proper court upon the order of such court, made upon petition filed by the guardian, but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser, the same as if a final patent without restriction upon the alienation had been issued to the allottee."

Under this statute plaintiff contends that at the time of the approval of the deed to the plaintiff by the Secretary of the Interior, there existed no other tribunal than the Secretary of the Interior with jurisdiction to determine the heirs of an Indian ward of the United States, and that the approval by the Secretary of the Interior of the deed carried with it a finding by the Secretary that Pope-tsait-ke was the sole heir of Isabel Pope-tsait-ke, and alone operated as a matter of law to convey the full title to the plaintiff. We believe this contention is well taken.

In 1910 the following statute was enacted by Congress:

"When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive." Section 4226, U. S. Compiled Statutes 1918.

In McKay v. Kalyton, 204 U. S. 458, the Supreme Court of the United States, in an opinion by Mr. Justice White on February 25, 1907, prior to the passage of the act of Congress of 1910, supra, held as follows:

"The United States has retained such control over the allotments to Indians that, except as provided by acts of Congress, controversies involving the determination of title to, and right to possession of, Indian allotments while the same are held in trust by the United States are not primarily cognizable by any court, state or federal."

In Bond v. United States, 181 Fed. 613, it is said in the syllabus:

"1. Act Cong. June 25, 1910, c. 431, 30 Stat. 855, provides that when any Indian to whom an allotment has been made, or may hereafter be made, dies before the expiration of the trust period, and before issuance of a patent, without having disposed of the allotment by will, the Secretary of the Interior shall ascertain the legal heirs of the decedent and his decision shall be final and conclusive. Held, that the act applies to any allottee who dies before the expiration of the trust period. Whether the allotment has been made at the time of the passage of the act or is made in the future, and whether the death occurs before or after the passage of the act."

In the body of the opinion, the court says:

"The supervisory power and control of the United States over allotted lands during the trust period was pointed out by the Supreme Court in United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532. This was a suit instituted at the direction of the Attorney General to restrain the collection of taxes on permanent improvements and personal property used in the cultivation of lands allotted to and occupied by certain Indians in the state of Dakota. The court held that, notwithstanding the allotment, the United States reserved such control over the allotment as was essential to cause the allotted lands to inure during the period in which they were to be held in trust 'for the sole use and benefit of the allottees,' and that the land, the improvements thereon, and the personal property used in their cultivation were mere instrumentalities of the government employed for the benefit and control of a dependent race, and were therefore not subject to taxation by the state, and that the government had such interest therein that it could maintain a suit to restrain the collection of such taxes. The title to the land and the consequent control thereof being in the United States, it was subsequently held in the Smith Case, 194 U. S. 401, 24 Sup. Ct. 676, 48 L. Ed. 1039, and the Kalyton Case, 204 U. S. 458, 27 Sup. Ct. 346, 51 L. Ed. 566, that the sole authority for settling all controversies necessarily including the determination of the title and incidentally the right to the possession of the Indian allotments while the same were held in trust by the United States resided in the Secretary of the Interior, and were not cognizable by any court, either state or federal, except as such authority has been expressly conferred by act of Congress."

The United States v. Bowling et al., 256 U. S. 484, the Supreme Court of the United States, speaking through Mr. Justice Van Devanter, used this language:

"Before coming to the acts under which the Secretary of the Interior proceeded, it will be helpful to refer to the modes, long in use, by which Indians are prevented from improvidently disposing of allotted lands.

One is to issue to the allottee a written instrument or certificate, called a trust patent, declaring that the United States will hold the land for a designated period, usually 25 years, in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and at the expiration of that period will convey the same to him, or his heirs, in fee, discharged of the trust and free of all charge or incumbrance. The other is to issue at once to the allottee a patent conveying to him the land in fee, and imposing a restriction upon its alienation for 25 years or some other stated period. While alienation is effectually restricted by either mode, allotments under the first are commonly spoken of as trust allotments, and those under the second as restricted allotments. As respects both classes of allotments—one as much as the other—the United States possesses a supervisory control over the land, and may take appropriate measures to make sure that it inures to the sole use and benefit of the allottee and his heirs throughout the original or any extended period of restriction. As an incident to this power Congress may authorize and require the Secretary of the Interior to determine the legal heirs of a deceased allottee, and may make that determination final and conclusive."

The deed involved in the instant case was made by the heir of the allottee before the termination of the trust period with the approval of the Secretary of the Interior. After the death of Isabel Pope-tsait-ke her heirs were as much wards of the Government and entitled to the protection and guardianship of the United States during the continuance of the trust period as the original allottee would have been entitled to this guardianship and protection, if living, and it must be presumed that the approval by the Secretary of the Interior of the deed by the heir, Pope-tsait-ke, was given in performance of the purposes of the subsisting trust relation to the same effect as would an approval by that officer of a deed by the original allottee executed prior to her death.

We are therefore of the opinion that the approval of this deed by the Secretary of the Interior operated to pass and did pass the full title to the land in controversy, and that the plaintiff was therefore able to convey and did convey to the defendants a good and merchantable title.

Attention is called by counsel for defendants in his brief to the case of Campbell v. Harsh, 31 Okla. 436, 122 Pac. 127, as controlling upon the proposition that the title sought to be conveyed by the plaintiff is not merchantable. An examination of this case, however, discloses that it is clearly distinguishable from the case at bar.

The Campbell v. Harsh Case, supra, was an action by the vendee to recover the sum of $500 which plaintiff alleged had been paid as part payment for a deed of conveyance of certain lands in Noble county, under a contract whereby the defendant agreed to convey good and sufficient title to said premises, "accompanied by an abstract of title showing perfect title." The defendant denied that the title was defective and in support of the abstract offered certain affidavits to the effect that his grantor was the sole heir of the original patentee. It was held that these affidavits were no part of the abstract and that the plaintiff was not compelled to accept title resting in part thereon. The court in that case did not pass upon the question of whether the deed without the affidavits offered in evidence would convey a good title. That question was not before the court for the reason that the defendant by offering in evidence the abstract conceded that his title was defective.

Here the plaintiff stands upon his claim that the deed on its face conveyed a good and merchantable title and this court is called on in this case to say whether or not that title is good or bad. In the Campbell Case, supra, the court in its opinion explicitly stated that it was not attempting to pass upon the defendant's title or say whether it was good or bad, but it held that the defendant having agreed to furnish an abstract showing the perfect title, would not be permitted by ex parte affidavits introduced by him in support of the abstract to support the title as disclosed in the abstract.

For the reasons stated in the opinion, the judgment of the trial court is affirmed.

By the Court: It is so ordered.