## MATTHEWS et vir v. STOVALL.

No. 33700.   May 16, 1950.

*216 P. 2d 975.*

J. Wilford Hill, of Cherokee, for plaintiffs in error.

Simons, Simons, Mitchell & Headrick and C. E. Munn, all of Enid, for defendant in error.

LUTTRELL, J.  This is an appeal by defendants, Maggie Matthews and Alfred J. Matthews, from a judgment of the district court of Alfalfa county in favor of plaintiff, W. J. Stovall, decreeing specific performance of a contract to convey real estate.

It appears that on and prior to July 11, 1946, defendant Maggie Matthews was the owner of 40 acres of land located in Alfalfa county. On that day, joined by her husband Alfred J. Matthews, she entered into a written contract for the sale of the land to plaintiff.

The contract provided that plaintiff was to pay $3,500 for the land, $100 of which was to be paid upon the execution of the contract. A warranty deed was to be executed by defendants and the deed and the contract together with a further check of $500 were to be deposited in escrow in the bank at Jet, Oklahoma, to be held by the bank until certain conditions were performed by defendants. They were to procure an abstract of the land and deliver same to plaintiff for examination and upon approval of the title and upon payment of the balance of the purchase price the deed was to be delivered to plaintiff. The $500 deposited, less abstract fees, was to be delivered to defendants as part of the purchase price.

The trial court found the issues generally in favor of plaintiff and entered judgment requiring defendants to specifically perform the contract.

Defendants alleged in their answer, and by their evidence sought to prove, that at the time the contract was executed it was agreed between the parties that plaintiff was to interview Carl Wells, the brother-in-law of Maggie Matthews, who was in possession of the property at that time, and that if Wells wanted the property at the price agreed upon between the plaintiff and defendants in the contract, the contract was not to be in force and effect, but was to be destroyed, and the rights of the parties thereunder cease and determine, and that this condition was a condition precedent to the validity and binding force of the contract.

The sole issue presented by defendants on this appeal is, that the judgment rendered is clearly against the weight of the evidence.

The evidence is conflicting. Plaintiff, in substance, testified as follows: He is living on a farm near the town of Nash, Oklahoma. The land in question is located near his farm. Essie Wells, who is a sister of defendant, Mrs. Matthews, was the owner of a 40-acre tract adjoining this land. Both parties inherited their respective tracts from their father. Carl Wells, husband of Essie Wells, was then renting the 40-acre tract here under consideration from Mrs. Matthews.

The defendants at the time lived, and are still living, near the city of Woodward, Oklahoma. On July 10, 1946, while in Woodward on other business, plaintiff ascertained that defendant Maggie Matthews might sell the 40 acres in question. He contacted Mrs. Matthews and after some negotiations offered to give her $3,500 for the tract. Mrs. Matthews informed plaintiff that she had agreed that in the event she should ever decide to sell the land, she would give her brother George, who resided in California, first chance to buy it at the price for which she was willing to sell and in the event he refused to buy, Carl Wells, her brother-in-law, was to have the option to purchase it at that price. Mrs. Matthews then communicated with her brother in California and received a reply from him that he did not desire to purchase the land at that price. She then tried to reach Carl Wells by telephone to submit an option to him to purchase the land, but Mr. Wells was then in Oklahoma City and could not be reached. The next morning plaintiff again saw Mrs. Matthews at her home and was informed by her that her brother in California did not wish to buy the land and that she was trying to communicate with her brother-in-law, Carl Wells, but had not yet succeeded in reaching him, but that she did talk with her sister Essie, the wife of Carl, who informed Mrs. Matthews that if she, Essie, did not call her back by 2:00 o'clock that day to go ahead and do as she pleased about selling the land.

Plaintiff again returned to the home of Mrs. Matthews in the afternoon of that day at about 4:00 o'clock and she then informed him that she had heard nothing from her sister Essie and that she was ready to close the deal.

Plaintiff, accompanied by his son Charles Stovall, and defendants, then went to the office of W. H. Boatman, an attorney in the city of Woodward, who drafted the contract and deed. The checks heretofore mentioned were then signed by plaintiff and delivered to Mr. Boatman, who thereafter transmitted the contract and deed, together with the $500 check heretofore mentioned to the bank at Jet, Oklahoma, with a letter stating that the papers should be held in escrow in accordance with the terms of the contract.

Plaintiff further testified while in the office of Mr. Boatman and while the papers were being drafted, and before they were signed, he stated to defendant Mrs. Matthews that if she did not then feel free to sign the papers that he would take her and the papers back to Nash, Oklahoma, where Carl Wells lived, and that she could then present the matter to him before signing. Mrs. Matthews replied that she did not care to go to Nash to consult with Mr. Wells; that her sister Essie told her to go ahead and do as she pleased about the land, and that she was willing and ready to sell, and she thereupon signed the papers. Mrs. Matthews in her testimony admitted that this conversation took place. Plaintiff's testimony in most respects is corroborated by his son Charles, who was present at the time.

Defendants do not dispute the testimony offered by plaintiff in so far as the witnesses have testified; however, they insist that their testimony does not include the entire conversation which took place between the parties prior to the execution of the various instruments. They testified that there was

an oral agreement entered into between the parties that after the signing of the contract and deed they were to be delivered to plaintiff; that he was then to call upon Carl Wells at Nash, and ascertain as to whether he was willing to exercise his option and purchase the land at the price agreed upon, and if so that the deed and contract should be ineffective and be returned to defendants and destroyed; but in the event he refused to purchase plaintiff should deposit the papers in the bank at Jet, there to be held in escrow in accordance with the terms of the contract. This plaintiff denies. Both defendants in their testimony admitted that it was agreed that upon the execution of the papers they should be delivered to Mr. Boatman and that he was to transmit them to the bank at Jet, and that he did thereafter so transmit them. Mrs. Matthews further testified that after the contract and deed were executed she received the $100 check from plaintiff as a down payment; that she immediately cashed the check and deposited the same to her credit in the bank.

Mr. Boatman testified by deposition. His recollection as to what actually transpired between the parties is rather hazy. In some respects he corroborated the plaintiff's testimony and in others he corroborated defendants. He testified that his recollection was not altogether clear as to the conversation that took place between the parties in his office, but that according to his best recollection it was agreed that upon execution of the papers they were to be delivered to plaintiff, who was to call upon Carl Wells and ascertain as to whether he would elect to buy the land, and was then to make disposition of the papers as testified to by defendants. He also testified that after the contract and deed were executed they were delivered to him by agreement of all the parties, and that he was instructed to transmit them to the bank at Jet, which he did. These statements are inconsistent. Both cannot be correct. It is more than prob-able that the conversation referred to by Mr. Boatman as having taken place in his office is the conversation heretofore detailed and which all parties admitted occurred. Mr. Boatman further testified that during the time the parties were in his office, plaintiff stated that within a few days he would call on Carl Wells and endeavor to make a sale or trade with him in regard to the land purchased.

Plaintiff admits that he made this statement and testified that it was a voluntary statement made by him and that this was the only conversation, with the exception of the conversation above detailed, which ever took place between the parties relative to talking with Carl Wells. He testified that he did thereafter within a few days see Carl Wells and endeavored to sell the land to him or trade it to him for other land but that no trade was ever made. There is no evidence tending to show that Carl Wells, during this conversation, informed plaintiff that he intended to exercise his option to purchase the land at the agreed price or that he was in a position and ready to do so. Carl Wells did not testify at the trial.

The evidence further shows that shortly after the papers were deposited in the bank at Jet, defendants repudiated the transaction, refused to furnish the abstract as provided by the contract, and tendered to plaintiff a check in the sum of $100 for the down payment made by him.

It is conceded and admitted by all parties that the offer made by plaintiff for the purchase of the land is about all the land is worth and that the offer was very satisfactory to defendants.

All of the witnesses, except Mr. Boatman, who testified in the case personally appeared before the court and orally testified. The court therefore had the opportunity to observe the witnesses on the stand, and to observe their demeanor, and was better able

to pass upon their credibility, and the weight to be given to their testimony, than is this court.

The trial court found the issues generally in favor of plaintiff. Such finding constitutes a finding of each specific thing necessary to sustain the general finding. Andrews v. English, 200 Okla. 667, 199 P. 2d 202. Such finding therefore constitutes a finding against the contention of defendants as to the existence of an oral contract, and a finding that at the time the contract and deed were executed defendants intended to and did in fact agree to convey to plaintiff a complete and unconditional title in and to the land.

In McCubbins v. Simpson, 186 Okla. 417, 98 P. 2d 49, we said that in this jurisdiction the rule is that whether specific performance of a contract should be granted is a question of equity, and that the application is addressed to the sound legal discretion of the trial court, and controlled by the principles of equity in full consideration of the circumstances of the case.

In King v. Gants, 77 Okla. 105, 186 P. 960, we said that where in a case involving specific performance of a contract the evidence was conflicting, the trial court having seen the witnesses upon the stand and their demeanor while testifying, and having found in favor of the plaintiff upon such conflicting testimony, we could not say that its judgment was clearly against the weight of the evidence. We think that rule applicable to the instant case, and after a careful study of the evidence as contained in the record, are unwilling to hold that the judgment is clearly against the weight thereof.

Affirmed.