SALISBURY et ux. v. MURRAY et ux.

No. 34933.    Jan. 10, 1953.

*252 P. 2d 455.*

Owen F. Renegar, Oklahoma City, for plaintiffs in error.

W. A. Blakeburn, Oklahoma City, and Lucius Babcock, Jr., El Reno, for defendants in error.

PER CURIAM. The appearance of the parties here is in the same order as that in the trial court. Plaintiffs in error will, therefore, be designated as plaintiffs, and defendants in error as defendants.

The defendants, George Murray and Marguerite B. Murray, his wife, owned, as joints tenants, with the right of survivorship, a tract of real estate in Canadian county, containing 1,120 acres. They had listed this real estate for sale at $40 per acre, or a total of $44,800, with T. H. Gilliland, a realtor of Oklahoma City. The plaintiffs were seeking to trade for a ranch and had enlisted the aid of George D. Polk, also a realtor of Oklahoma City, in finding something that would suit them. Polk talked to Gilliland and learned that the Murray ranch was for sale, and ascertained the price asked. Polk took the plaintiff, Fred T. Salisbury, to view the Murray ranch and then prepared the written offer, which, upon acceptance by the defendants on March 26, 1949, became the contract herein involved. Previous to the morning upon which the contract was signed, Polk had never met the defendants. The pertinent portion of the contract wherein plaintiffs were designated as first parties, and defendants as second parties, is in language as follows:

"* * * said first party hereby offers to purchase from second parties by good and sufficient Warranty deed, the following described real estate, situated in Canadian County, State of Oklahoma, to-wit:

"Northeast Quarter and Southwest Quarter and Southeast Quarter of Section Twelve (12), and all of Section Thirteen (13) Township Eleven North (T11N), Range Ten (R10) W.I.M., subject to three-fourths (3/4) mineral rights,

"for the sum of Forty Four Thousand Eight Hundred and no/100 Dollars as follows: Mtg. of Record on Lake View Tourist Court in the sum of $25,500.00 Five Per Cent Interest.

"Balance of purchase price to be covered by first mtg. on said above property to run for a period of ten years at five per cent with privilege of paying same at any interest payment date."

After the abstracts were exchanged for examination, the defendants were advised by their attorney that the mortgage of record on Lake View Tourist Court, which the defendants were to accept as the down payment on their ranch, was a second mortgage, being subordinate to a first mortgage of $60,000. Defendant George Murray then advised Gilliland and Polk that it was his understanding that the mortgage which he was accepting was a first mortgage, and that he would not, under any circumstances, accept a second mortgage as a down payment, and that, so far as he was concerned, the deal was off. A few days later, on April 21, 1949, this action was instituted upon petition wherein the plaintiffs alleged the execution of the written contract and that the defendant George Murray was advised by his agent, Polk, before the contract was signed, that the mortgage referred to therein was a second mortgage only, the plaintiffs alleging that they were ready, willing and able

666

to perform all of their obligations under the contract, and praying for a decree of specific performance.

After the disposition of various preliminary pleadings filed by the parties, the defendants filed their answer, denying that Polk was their agent, and further denying that they had any knowledge that the mortgage referred to in the contract was only a second mortgage until the abstract was examined, and further alleging that, according to custom, the term, "mortgage of record," implied a first lien, and was so understood by the defendants at the time they signed the contract. Defendants prayed that plaintiffs take nothing, and that their title to the ranch lands be quieted. Upon the issues thus joined, the cause was tried to the court, without a jury, on April 14, 1950, resulting in a judgment denying specific performance.

The evidence was sharply conflicting as to whether or not Polk advised the defendant George Murray, at the time the contract was signed, that the mortgage was a second mortgage only. Polk testified:

"Q. Had you been told that there was a first mortgage ahead of it originally in the sum of sixty thousand dollars? A. I didn't know the amount. I knew there was one on it.

"Q. Did you tell him this was a second mortgage? A. Yes, sir, he knew it was. That's why I explained how it was paid.

"Q. Was Mr. Gilliland nearby during this conversation? A. Yes, sir, he was sitting right across the desk, just like those people are there (pointing to counsel table)."

No witness other than Polk testified that Murray was informed of its being a second mortgage. Gilliland testified:

"Q. Just tell what you heard. A. I heard them talking. They read the contract, and I heard it read, and he says—

"Q. Who said? A. Mr. Polk said, 'Here is the contract. Look it over and see what you think.' That is, to me. And I said, 'Murray is the one to look at it, and if he likes it, all right. He is the one—he is the one who is buying it.' And I saw in here a 'Mortgage of record,' and I didn't say anything about it because I asked Murray if he understood everything about it, and he said, Yes, he did."

Defendant George Murray, who executed the contract in the Gilliland office about 30 minutes after he had first heard of the deal, denied emphatically that he was advised that it was a second mortgage that he was agreeing to accept as the down payment. The contract was later taken to the home of George Murray, where it was signed by the defendant Marguerite B. Murray, joint tenant, in the presence of her husband and agent Polk, and plaintiffs did not contend that she was advised that it was a second mortgage which the Murrays were accepting. The testimony showed that there was, in fact, no mortgage of record against the Lake View Tourist Court in the exact sum of $25,500, but that there was a second mortgage securing a debt of $35,000, represented by two promissory notes, one of which was in the sum of $25,000, and was held by the plaintiffs, and the other, in the sum of $10,000, was held by others. Testimony was introduced by the plaintiffs in an endeavor to establish that the second mortgage was worth face value, and answering proof was introduced by the defendants for the purpose of showing that the value of the Lake View Tourist Court was such that the second mortgage, being subordinate to a first lien of $60,000, was practically of no value.

At the conclusion of the trial, the court extended the following remarks, among others, into the record:

"I don't think this kind of contract is good legally. I know it isn't in equity. In other words, the contract isn't drawn to disclose the facts as to the mortgage, even if it were being relied upon as it is written here. If a default was made on either one of those notes, the party would have a right to come in and foreclose. Isn't that right? * * * That

is correct, and the thing he would foreclose on in his suit on the note would be the lien secured by the collateral which would all be in one piece and be joined by another party who would have an equity in that suit. Maybe they were keeping up the $25,500.00 note, or maybe they weren't keeping it up, and the Curtis and Swan note was being kept up, and if Murray would file suit Curtis and Swan wouldn't want to file suit but if he filed his suit on a foreclosure subject to the first mortgage, then you would have something else. In other words, you would have a proposition of equities and that is a position in which the Murrays would be put in this case here. Just the mere mention of a second mortgage, if it had been mentioned as a second mortgage in this contract, the way it is drawn, 'Second Mortgage of record for $25,500.00' isn't sufficient to take it out from under the rules of equity. Legally and as a matter of equity I don't see how the contract can stand or how in the world it could stand. The court finds for the defendants in this case, to which the Plaintiffs except and exceptions are allowed. Judgment for the Defendants as per Journal Entry."

The plaintiffs rely upon two assignments of error: Assignment 1, that the judgment is not sustained by the evidence and is contrary to the evidence; assignment 2, that the judgment is not sustained by law, and is contrary to law.

In resolving the issues raised by the first assignment, we must bear in mind that this is an action in equity. In equity cases this court has repeatedly and consistently followed the rule as announced in the first syllabus paragraph of Jupe v. Jupe, 198 Okla. 100, 175 P. 2d 976:

"In an action of equitable cognizance this court will examine the record and weigh the evidence, but it will not disturb the judgment of the trial court unless it is found to be clearly contrary to the weight of the evidence."

In their brief, the plaintiffs cite the case of Davidson v. Roberson, 92 Okla. 161, 218 P. 878. We have carefully read this decision, and find that the factual situation there is so unlike that found here as to render any holding therein of meager assistance in resolving the issues before us. There the court was able to say: "* * * yet we cannot find that the mind of the parties did not meet upon every essential element of the contract. * * *"

The plaintiffs, as a part of their case, alleged that the defendants were advised before signing the contract that the mortgage referred to therein was a second mortgage only. The defendants deny this allegation in their answer, and the court, after hearing all of the testimony, and considering the circumstances involved, apparently determined this factual issue in favor of the defendants. In view of the testimony of Polk, it is difficult to comprehend how he could have fully explained to the defendants the status of the security they were accepting as the cash payment, because he did not know the amount of the indebtedness secured by the first mortgage.

It is our opinion that the finding of the court upon this factual issue is in accordance with the preponderance of the evidence and is not clearly against the weight thereof, and upon the first assignment of error, we find no justification for reversal of the holding of the trial court.

Directing our attention to assignment No. 2, involving questions of law, we find it appropriate to refer to the statutory provisions which appear pertinent. In 15 O.S. 1941, c. 1, §51, it is provided:

"The consent of the parties to a contract must be:

"1. Free

"2. Mutual; and

"3. Communicated by each to the other."

Section 66 of the same Chapter provides:

"Consent is not mutual unless the parties all agree upon the same thing in the same sense."

In the early case of Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 P. 545, this court quoted with approval the following rule:

"Mr. Pomeroy in his work on Equity Jurisprudence, at section 1405, says in substance that a contract to be subject to specific performance must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it is made. It must be, in general, mutual in its obligations and in its remedy, perfectly fair, equal, and just in its terms and its circumstances, and be such that the remedy of specific performance will not be harsh or oppressive. A rule of unexceptional application is that specific performance will not be awarded unless the contract is certain, fair and just in all its parts and any fact showing that the contract is unfair, unjust, and against good conscience will justify the court in refusing such decree, although the same, if duly executed, would present no sufficient ground for cancellation, or would be enforceable at law. Dalzell et al. v. Dueber Watch Case Mfg. Co., 149 U.S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749; Federal Oil Co. v. Western Oil Co. et al. (C.C.) 112 Fed. 373".

In McCubbins v. Simpson, 186 Okla. 417, 98 P. 2d 49, there was quoted a footnote from Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, §1404, wherein the contractual elements justifying specific performance were defined:

"These elements, conditions and incidents, as collected from the cases, are the following: The contract must be concluded, certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation, or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; and finally, it must be capable of specific execution through a decree of the court."

We have carefully read all of the cases cited by the plaintiffs in support of this assignment. In none of them is there sufficient similarity in facts as to cause the holdings to be persuasive here. In none of them is there any adjudication which would weaken or modify the equitable rule announced in Superior Oil & Gas Co. v. Mehlin, supra.

This court has repeatedly held that specific performance of a contract will not be enforced unless its terms are clear, definite and certain. Bordner v. Gordon, 94 Okla. 165, 221 P. 50; Whisnand v. Wingfield, 186 Okla. 148, 96 P. 2d 318.

In Sticelber v. Iglehart, 169 Okla. 453, 37 P. 2d 638, it was held:

"No contract is complete without the mutual assent of all of the parties to all of its terms. Atwood v. Rose, 32 Okla. 355, 122 P. 929. A contract must not only be fair and just, but must be certain in its terms before specific performance will lie. Superior Oil & Gas Co., v. Mehlin, 25 Okla. 809, 108 P. 545; Hill Oil & Gas Co. v. White, 53 Okla. 748, 157 P. 710."

The testimony was in conflict as to whether or not there was a meeting of the minds upon the nature of the security which the defendants agreed to accept as the down payment on their ranch. The plaintiffs complain that the defendants did not go to the records and determine for themselves the nature of such security, after signing a contract agreeing to accept a "mortgage of record." But, as the trial court found, the defendants could not have gone to the records and found any such mortgage as that mentioned in the contract. All that the defendants could have acquired, had they consummated the transaction in accordance with the intent of the plaintiffs, was an undivided 5/7ths interest on a second mortgage securing a debt of $35,000. It must be remembered that the contract was prepared by the ageent of the plaintiffs. He knew that the mortgage in question was a second mortgage, and the lack of mutuality resulted from his failure to show such fact in the written offer which he submitted to the defendants.

Sec. 170, c. 3, Title 15, O.S. 1941, provides:

"In case of uncertainty, not removed by the preceding rule, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. * * *."

This being an action in equity, the plaintiffs appeal to the conscience of the chancellor. This court has repeatedly held: Specific performance is not a matter of right, but a question of equity, and application is addressed to the sound legal discretion of the trial court and controlled by the principles of equity in full consideration of the circumstances. McCubbins v. Simpson, 186 Okla. 417, 98 P. 2d 49; Matthews v. Stovall, 203 Okla. 108, 216 P. 2d 975.

From a careful review of all of the testimony, and of the facts and circumstances involved in this proceeding, we are of the opinion that equity cannot lend its helping hand to the plaintiffs herein, and that the application of the remedy of specific performance, under facts such as shown here, would be both harsh and oppressive. The judgment of the trial court is affirmed.

This court acknowledges the services of Attorneys M. A. Holcomb, Keith Drum, and Orlando F. Sweet, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.