Frank R. MOREE, Plaintiff in Error,

v.

John O. MOREE, Defendant in Error.

No. 39570.

Supreme Court of Oklahoma.

April 17, 1962.

Rehearing Denied May 23, 1962.

H. Tom Kight, Jr., Warren Watkins, Claremore, of counsel, for plaintiff in error.

Ralph B. Brainard, John R. Carle, Claremore, for defendant in error.

HALLEY, Justice.

This appeal, lodged here by Frank R. Moree, plaintiff below, presents for our consideration the correctness of the trial court's decree denying him relief in a suit against John O. Moree (defendant below) for specific performance of an alleged oral agreement to convey some 167 acres of defendant's land in Rogers County, Oklahoma. The land is situated about 4 miles North and nearly a mile West of Will Rogers Memorial. Our continued reference to the litigants will be by their Christian names or by designation in the lower court.

The parties hereto are brothers. Both have grown to manhood in the immediate vicinity of the land in controversy. Frank, who is a farmer, has since 1932 owned and occupied a 170 acre tract which adjoins the land in litigation. John left Rogers County in 1917, at the age of 20. About 1923, John became employed by an oil company for whom he has ever since been engaged in various parts of this State as a pumper. In the latter part of 1940, John learned that the land here in question would be offered for sale by the Commissioners of the Land Office. He became interested in its acquisition for a home site, "intending to build on it someday." Under the rules of the Commissioners of the Land Office vendees must use and occupy purchased land for a period of not less than five consecutive years. Since John could not meet this requirement, the brothers agreed that Frank would submit a bid in his own name, acquire and occupy the property, and then transfer it to John after the lapse of five years. Pursuant to this understanding, Frank bought the land in 1941 with money furnished by John. An "amortized Certificate of Purchase" was issued to Frank on October 9, 1941. The initial payment, made at the time of this sale, consisted of $198.13; and the balance of the purchase price, evidenced by a note bearing 3% interest and secured by a mortgage, was divided into equal annual installments, each of like amount as the down-payment. The ad valorem tax then assessed against this property was slightly less than $50.00 (per year). In pursuance of an oral understanding between the brothers, Frank took possession of the land and cultivated it in part, paying as rent the annual installments

due to the Commissioners of the Land Office, as well as ad valorem taxes. As previously agreed, five years after the purchase Frank assigned to John all of his interest in the property. The assignment, executed by Frank on November 23, 1946, was approved by the Commissioners of the Land Office. On October 28, 1947, a "Certificate of Purchase pursuant to Assignment" was issued to John. This certificate was filed of record (by the County Clerk of Rogers County) on March 3, 1951. After the transfer to John, Frank continued to occupy and cultivate the land and was in possession thereof when he commenced the present suit on October 27, 1957.

The facts, as outlined thus far, are undisputed. The controversy which occasioned the present litigation concerns events and transactions occurring after Frank's assignment of the land to John. As revealed by Frank's testimony, John orally agreed to sell him the land in question while visiting the farm in September 1948. Under the terms of their agreement, Frank was to pay $3,000.00 for John's equity, and was to assume the outstanding indebtedness to the Commissioners of the Land Office. The principal balance on this liability amounted then to approximately $2,923.09. Frank maintained that he had paid John $2,000.00 by check dated September 14, 1948, and that he still owed $1,000.00 "on the deal." According to Frank's version, "I didn't have but two thousand at the time" and "I was to give him (John) the balance of it, when I got the money." In 1948 and 1949, Frank made two payments on the loan to the Commissioners of the Land Office, each in the sum of $500.00. The purpose of these large payments was "to get the place paid out a little bit quicker." At the time of his oral agreement with John, Frank was having marital difficulties. As he anticipated a divorce suit, he preferred that the land remain in John's name. Frank and his wife became later reconciled and their difficulties ended in 1953 or 1954. In 1950, Frank ceased paying ad valorem taxes on the land as well as the loan installments to the Com-

missioners of the Land Office. Between 1950 and the time of trial (November 1960), all these payments were made by John. Frank knew that John was making all these payments "with his own money." Sometime in the spring and fall of 1957, Frank visited at John's home in Cox City, Oklahoma, and demanded a conveyance to the land. When John refused, Frank instituted the present action in October 1957, praying for an "accounting" and seeking to compel specific performance of his alleged oral agreement with John.

As revealed by John's version of the events, Frank "was having trouble with his wife, and he wanted to get the three thousand dollars out of his name." It was Frank's own idea to lend John $3,000.00, give him a check for $2,000.00, and make two $500.00 payments to the Commissioners of the Land Office with the remainder. At about the same time Frank (admittedly) also gave John a note and chattel mortgage for $20,000.00. The latter transaction was a pure sham designed to deceive Frank's wife. John denied making an oral agreement to sell Frank the land in question, and maintained that Frank was in possession as his tenant from year to year. According to John, the brothers had agreed on a rental of $250.00 per year; Frank was to pay taxes of slightly less than $50.00 and the loan installments of $198.13, and he was to remit to John the difference between the sum of these two payments and the rental of $250.00. This arrangement, John related, remained in effect between 1942 and 1949. By oral agreement between the brothers, the rentals were increased in 1950 to $400.00 per year. Aside from the $3,-000.00, John also owed Frank $175.00, or a total of $3,175.00. Each year since he borrowed the money in 1948, John had been deducting the rental charges due him on the property from the aggregate amount owing by him to Frank.

The trial judge found that Frank was "entitled to no relief * * * under his petition." He entered a judgment quieting title to the land in John (under his cross-

petition), and declaring that Frank had "no interest in the property" in question, except as John's tenant from year to year. Frank asserts error in the judgment so rendered, urging that the evidence discloses "every indicia necessary to the making, execution and performance of an oral agreement" to convey land, and that the lower court did, in effect, so "find." Our attention is called to the trial judge's comments at the close of the evidence, which so far as pertinent, are:

"* * * Notwithstanding the fact that there was marital trouble, that there was a contract made, which there probably might very well have been, it should have been pursued in 1950 and most certainly not later than 1953. Therefore, it would be my opinion that Plaintiff would be guilty of laches * * *."

■ In the case of In re Warwick's Estate, Okl., 291 P.2d 346, we held:

"Oral statements of the trial court, made in announcing judgment, do not constitute 'findings of fact' and will not be considered as such to vary the judgment of the court as contained in the journal entry; but when properly incorporated in the record may be examined in determining the correctness of the conclusion on which the judgment is based."

See also, Miller v. Young, 197 Okl. 503, 172 P.2d 994; Hays Trucking Co. v. Maxwell, Okl., 261 P.2d 456; Ralston v. Tucker, Okl., 324 P.2d 525; Holliday v. Holliday, Okl., 327 P.2d 456.

■ The cause now engaging our attention is one of equitable cognizance. Salisbury et ux. v. Murray et ux., 207 Okl. 664, 252 P.2d 455. On review of equity suits the appellate court is bound neither by the reasoning of the trial court nor by its findings, but may, where the law and facts warrant, affirm the judgment if it is sustainable on any rational theory, and the ultimate conclusion reached therein is correct. Allen v. Morris, Okl., 323 P.2d 736; Ellis v. Williams, Okl., 297 P.2d 916.

■ The question of whether the brothers did in fact enter into an oral agreement does not form the "primary" issue in this case. Specific performance is not a matter of right, but a question of equity addressed to the sound discretion of the trial court. It is controlled by the principles of equity jurisprudence to be applied in full consideration of facts and circumstances of each cause. One who seeks the aid of equity in enforcing specific performance must appeal to the conscience of the Chancellor. Salisbury et ux. v. Murray et ux., supra.

■ In the cause at bar, even if we were to assume Frank's version of the transaction, we must nonetheless conclude from the evidence that the undisputed facts clearly disclose Frank's failure to maintain an attitude indicating continued obligation under the contract sought to be specifically performed. It stands uncontroverted that for a period of nearly seven years before this suit was commenced Frank had failed to claim or act under the contract and had knowingly allowed John to pay loan installments and ad valorem taxes due on the property in question. Neither did Frank exercise any diligence in tendering the balance of $1,000.00 asserted by him to be due John under the alleged oral agreement. No explanation was offered for this delay in Frank's performance of the contractual conditions, and the evidence, viewed as a whole, strongly militates against the existence of any equitable circumstances preventing performance within a reasonable time. There is also undisputed evidence in the record of an intervening appreciable increase in the per acre value of the property which occurred about 1957, when Frank first made known his claim "for a deed." In short, there is no showing that Frank so conducted himself in the seven years next preceding the commencement of this action as to indicate that he then continued to treat the contract, if any there was, as a valid and subsisting obligation. To the contrary, the evidence considered in its entirety, is sufficient to justify our belief

that Frank intended to, and did abandon, and waive whatever rights he may have had in the land, and that the oral agreement, if in existence, became terminated and extinguished. When the evidence discloses that the purchaser under a contract to convey realty has, for a substantial number of years, failed to make payments according to the terms of the asserted contract, or to pay taxes assessed against the premises, the presumption is strong that he has abandoned his contract, and in such case, it is proper for a court of equity to deny him the relief of specific performance. Asher v. Hull, 207 Okl. 478, 250 P.2d 866; Atteberry v. Aulick, 204 Okl. 540, 231 P.2d 993; Parks et al. v. Classen Co., 174 Okl. 237, 49 P.2d 1101; see also, Montgomery v. Wise, 179 Okl. 247, 62 P.2d 647; Freeman v. King et al., 111 Okl. 27, 238 P. 850; Crutchfield v. Griffin et al., 139 Okl. 35, 280 P. 1075; Nelson v. Hamra, 127 Okl. 141, 259 P. 838.

Frank also complains of trial court's ruling in admitting what is asserted to be self-serving documentary evidence. The evidence thought objectionable related primarily to the amount of rentals claimed by John to be due for the occupancy of the land in question. This issue was not decided by the trial court; nor is it involved and urged on this appeal. In view of our disposition, the error, if any, was at most harmless. We express here no opinion upon the dispute as to whether there was an agreement for an increased amount of rentals, and what aggregate amount, if any, John may assert to be owing him from Frank for the use and occupancy of the land in question. Atteberry v. Aulick, supra.

The decree denying specific performance is not against the clear weight of the evidence and is consonant with the established principles of equity jurisprudence.

Judgment affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, JACKSON, IRWIN and BERRY, JJ., concur.