Aubry PRINCE, Plaintiff in Error,

v.

Lona ALTIZER, Defendant in Error.

No. 39267.

Supreme Court of Oklahoma.

June 30, 1964.

Arnote, Bratton & Allford, McAlester, for plaintiff in error.

Varner & Miller, Poteau, for defendant in error.

BLACKBIRD, Chief Justice.

The parties appear in this appeal in the same relative position, and will be hereinafter referred to, as they appeared in the trial court. There, plaintiff sought specific performance of a written agreement entitled "SALE CONTRACT" in which he was designated "party of the first part" and defendant was referred to as "party of the second part." The property involved in the sale contract is Haskell County real estate, geographically described as the SW¼ of Section 2, Township 9 North, Range 18 East.

When this contract was drafted, record title to the surface of the subject 160-acre

tract was in the name of defendant's husband, who had died in November, 1941. An additional heir of said decedent was a son by a former marriage. Although defendant claimed that the decedent had purchased the land entirely with her separate funds, and that, at his death, he held it in trust for her, and also that, notwithstanding previous alienation of a substantial portion of the mineral estate under said tract, she was the real owner of ¾ths of said estate and all of the surface rights, none of these claims had then been judicially established, and she knew that an action to quiet title would have to be maintained for such an adjudication.

As early as 1953, she engaged the late Stigler attorney, E. O. Clark, to represent her in instituting such a quiet title action. During the two or three years that followed, Clark had apparently taken no steps to bring such a suit; and, in December, 1955, defendant executed and delivered to plaintiff a one-year agricultural lease covering the subject tract, for a consideration of $150.00. It was about the time when, under this lease, plaintiff went into possession of the tract, except the house on it, of which one Winnie Wilhite adamantly retained possession, that he and defendant reached a tentative oral agreement for plaintiff to purchase the property. Pursuant to this agreement they went together to attorney Clark's office, where, on January 9, 1956, his secretary, apparently in Clark's absence, drafted the aforementioned "SALE CONTRACT"

In the provisions of the sale contract specifically contemplating the obligation on defendant's part to institute and prosecute a quiet title action to perfect a merchantable title that could be conveyed to plaintiff for an agreed consideration of $3000.00, it was also agreed that if she was "unable to quiet her title to the surface and as much as one-half of the minerals in and under same, then second party will not be bound by this contract, * * *". The contract also provided that if defendant was unable to quiet her title to as much as one-half of the minerals, then plaintiff, if he desired, could buy all of defendant's right, title and interest for the $3000.00. The contract further provided that if defendant was not able to convey her interest in the property to plaintiff before his lease expired, he would be "automatically released" from the contract.

After most of the year 1956 had elapsed without plaintiff ever having gained possession of the afore-mentioned house on the premises from Winnie Wilhite, and the property had increased in value due to condemnation of land near it for the location of Lake Eufaula, and the condemnation of a part of the tract itself for the location of an access road to the dam to be constructed to help create said Lake, plaintiff made it known to defendant that he would give her $4000.00 if she would execute and deliver to him a quit claim deed to the property. She did not accept this offer; and, no quiet title action had been commenced on her behalf, when plaintiff, on April 16, 1957, filed the present action against her.

A few days thereafter, on April 22, 1957, attorney Clark instituted the aforementioned quiet title action on defendant's behalf, and judgment perfecting her claimed title in the land was thereafter entered in said action on July 2, 1957.

The present action was not tried until the Fall of 1958. After one continuance of said trial, judgment was rendered for the defendant on the basis of the following findings:

> " * * * that specific performance of the contract in this case should be refused on the grounds of inadequacy of consideration and on the grounds that the defendant * * * was an old and infirm lady, partially inadequate to protect her interests in a business transaction. The Court further finds that the parties should be left to their remedy at law. * * *."

After the overruling of his motion for a new trial, plaintiff perfected the present appeal.

■ For reversal of the trial court's judgment, plaintiff urges several assignments of error in arguments which include some calculated to demonstrate that said court's above quoted findings as to inadequacy of consideration and defendant's age and infirmity, were erroneous and furnish no sufficient basis, cognizable either in law or equity, for such judgment. Our consideration of said judgment is not confined to the findings, or reasons for it, recited therein. In Moree v. Moree, Okl., 371 P.2d 719, 722, we said:

"* * * On review of equity suits the appellate court is bound neither by the reasoning of the trial court nor by its findings, but may, where the law and facts warrant, affirm the judgment if it is sustainable on any rational theory, and the ultimate conclusion reached therein is correct. Allen v. Morris, Okl., 323 P.2d 736; Ellis v. Williams, Okl., 297 P.2d 916."

In plaintiff's petition, he alleged that he "* * * deposited the sum of $300.00 * * *" with the aforesaid Miss Rogers "* * * to bind * * *" the subject agreement (though the written memorial of said agreement contains no provision for so-called "earnest money", or any such deposit). Defendant's answer pleaded, in substance, that such deposit was required by an oral agreement the parties entered into at the same time they agreed to the other terms of the sale contract, and that a part of said agreement was the mutual understanding that said sum was to be available to defray defendant's expenses in clearing her title to the property. Defendant further pleaded that plaintiff refused to deposit said sum with Miss Rogers and attempted to give her his personal check for that amount only on condition, or with the restriction, that it would not be cashed until he was ready to "close the entire transaction." Defendant also pleaded, among other things, in substance, that this alleged violation of the parties' agreement by plaintiff made it impossible for her to clear her title within the period required by the con-

tract, and consequently the situation "in which he finds himself", is due to his own fault—in short, that defendant's failure to discharge the duty prescribed for her in the agreement was caused by plaintiff's previous breach of their agreement in failing to discharge his duty to pay over the aforementioned sum of money.

There is nothing in the pleadings, or evidence, of either of the parties to detract from the conclusion that plaintiff's delivery to Miss Rogers of the sum of $300.00 was a part of the consideration for their contract, and was necessary to make it binding.

It is undisputed that nothing was done concerning any such delivery until after the written agreement had been signed, the parties had apparently departed from the Clark law office, and plaintiff had returned there ostensibly to carry out that part of the agreement. In his testimony, plaintiff did not deny that said sum was to be deposited with Miss Rogers in such a way that it could be used by her, or the defendant, in defraying the cost of the quiet title action contemplated in the parties' agreement. His testimony was merely to the effect that he did not restrict the cashing of the check; while Miss Rogers—testifying on defendant's behalf—stated, in substance, that that was what he did do, by writing on the check's left hand corner that "* * * it was not to be cashed, until the end of the law suit * * *". Also in her testimony, Miss Rogers described how she explained to plaintiff that a check which could not be cashed immediately would not comply with the parties' agreement nor be of any assistance to defendant in carrying out her part of it. She further testified, in substance, that plaintiff did not want to deliver a check whose proceeds would be so available.

If plaintiff's restricted check was left with Miss Rogers in the Clark law office, the record does not show what became of it. Miss Rogers testified that she did not know what happened to it, but that she "presumed she returned it to him" and he "probably

834

ιore it up." In his testimony, plaintiff never did deny categorically, or directly, that Miss Rogers refused to accept his check, or that she returned it to him, but when asked, on cross examination, if he had the cancelled check, he answered in the negative, and further stated that the check was never cashed, and added "* * * she (Miss Rogers) is supposed to still have it." In this testimony, plaintiff further revealed that he learned in 1956, that the check had never been presented to his bank for payment. When asked if, after he learned this, he had said "anything to anyone * *" about it, he answered: "Oh, I told my lawyer that it hadn't. That's about all I told."

It is obvious from an examination of the record in this case that, if plaintiff refused to deliver to defendant, or Miss Rogers, or some other authorized agent for defendant, the sum of $300.00, in cash, or an unrestricted check, payable immediately upon presentation to the bank on which it was drawn, or a check of such character as is customarily accepted, or considered, in such transactions as the equivalent of cash, he did not comply with that which, on the basis of undisputed testimony, was one of the important terms of the parties' agreement. Whether or not this was a breach of contract, or whether it legally justified defendant in concluding that the parties' agreement never became a binding contract without such a deposit of the $300.00, or that, if it had once been binding, it was, by such failure omission or refusal, abandoned, or automatically terminated, without the necessity of any action on her part, or whether plaintiff's compliance with that part of the agreement was waived by the subsequent conduct of defendant, her sister and brother-in-law, and/or her attorney, we find it unnecessary to decide in this kind of an action. In Moree v. Moree, supra, we said:

"* * * Specific performance is not a matter of right, but a question of equity addressed to the sound discretion of the trial court. It is controlled by the principles of equity jurisprudence to be applied in full consideration of facts and circumstances of each cause. One who seeks the aid of equity in enforcing specific performance must appeal to the conscience of the Chancellor. Salisburg et ux. v. Murray et ux., supra."

See also Crutchfield v. Griffin, 139 Okl. 35, 280 P. 1075, 1077, Bertrand v. Appleby, 135 Okl. 237, 275 P. 341, and 49 Am.Jur., "Specific Performance", sec. 40. It is evident from the trial court's judgment, that plaintiff was not successful in demonstrating to said court that he should be granted the specific performance he sought, otherwise he would not have been specifically relegated to his remedy at law.

Under the principles above referred to we cannot say that court abused his discretion or acted contrary to law or to the undisputed evidence in denying plaintiff such relief. Accordingly, the judgment of said court is hereby affirmed.

HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.